O'NEIL *v.* KANSAS CITY, S. & M. R. Co.　ARMSTRONG *v.* SAME.　BARTHOLOMEW *v.* SAME.　ALLEN *v.* SAME.

(*Circuit Court, W. D. Tennessee.* July 20, 1887.)

1. COSTS—WITNESS FEES—REMEDY FOR RECOVERING.

A witness subpœnaed by the prevailing party to the suit cannot, upon his own motion, have his fees that remain unpaid taxed in the bill of costs against the losing party; and *it seems* that the prevailing party himself cannot have them taxed until he has paid the witness, either before or after the service has been rendered, and before judgment for costs.

2. UNITED STATES COURTS—STATE PRACTICE AS TO COSTS.

The federal statutes regulate the matter of fees and costs in the courts of the United States, and the statutes and practice of the state are not binding in matters comprehended by the federal statute. Hence any state practice of indulgence of credit for the fees of litigation until final judgment for costs, does not obtain in the federal courts, where the act of congress prescribes a specific regulation on the subject. The Tennessee practice of giving credit for fees until final judgment, and return of *nulla bona* against the losing party, is a voluntary indulgence by the persons entitled to the fees, and not, perhaps, a strict right under the statutes of the state.

Application for Witness Fees.

These were suits for damages sustained by the plaintiffs by reason of the construction by defendant of its railroad tracks along the street in front of their property, whereby the ease of ingress and egress was impaired. There were several such suits, brought by other owners having property abutting on the street so occupied by the railroad, and all resulted in judgments against the defendant. In several instances the same witness was summoned for the plaintiff in more than one case, though there is no pretense that any witness was paid or tendered his fees, before or after attending the court, by any one of these plaintiffs. The costs in the earliest cases disposed of, including witness fees, were paid by the defendant; but it refused to pay the fees of certain witnesses in the other cases, who had been already paid for attendance, on the grounds that there was no sufficient evidence of such attendance, that the fees claimed were not *bona fide*, and that the witnesses were entitled to their several fees in but one case, irrespective of the number of cases in which they were summoned. Whereupon this application is made *by two of the witnesses*, who appear by counsel, and ask "that the defendant be ordered to pay them." The plaintiff in no one of the cases has taken any part in this application, which is wholly *ex parte*, by the witnesses.

*E. B. McHenry*, for the application.

*Newman Erb*, contra.

HAMMOND, J. In the cases of *Archer* v. *Insurance Cos.*, *ante*, 660, (decided at the April term, 1887,) I ruled that, under section 848 of the Revised Statutes, a witness summoned in several suits, and who attended under service upon him of subpœna in each suit, was entitled to his fees in all the cases, the parties being different; and that the fact that there was a common defendant, the plaintiffs not being the same, did

not alter the rule. That was the sole question in those cases, so far as the fees of witnesses were involved. Here the defendant denies its liability under the judgments rendered against it in these cases to any one but. the judgment plaintiff, and challenges the right of these two witnesses to make this application, as not being parties to the suit, nor seeking any relief or payment from the party at whose instance and for whose benefit the fees claimed were earned. In this and like applications the distinction between *fees* and *costs* has been entirely overlooked, the latter being an allowance, always given by statute, to the party for expenses paid or incurred in conducting his suit, while fees are compensation to an officer or witness or others for services rendered for the party in the progress of the cause. Strictly speaking, the prevailing party to a suit recovers, *as costs* against his adversary, only *the fees* which he himself has paid, or is liable to pay, and hence the usual form of judgment was for the recovery, "and his costs in this behalf expended." The claim for *fees* in a case, therefore, is only good and enforceable against the party to the suit for whom the services were rendered, entitling the claimant to compensation, and not against the losing party simply because the other party to the suit has a judgment or decree against him. Otherwise every witness, officer, printer, etc., having fees unpaid in a case, would be, equally with the winning party, judgment creditors against the losing party for the amounts severally due them.

Costs were not recoverable at common law, and were first given by the statute of Gloucester, (6 Edw. I. *c.* 1,) and are entirely regulated by statute as to both item and amount. The federal fee-bill act of 1853, which abolished all former practice and laws on the subject of fees and costs in the courts of the United States, prescribed the items composing a bill of costs to be taxed against the losing party. It appears as section 983 of the Revised Statutes, and is as follows:

"The bill of fees of the clerk, marshal, and attorney, and the amount paid printers and witnesses, and lawful fees for exemplifications and copies of papers necessarily obtained for use on trials in cases, whereby law costs are recoverable in favor of the prevailing party, shall be taxed by a judge or clerk of the court, and be included in and form a portion of a judgment or decree against the losing party. Such taxed bills shall be filed with the papers in the cause."

In *Wooster* v. *Handy*, 23 Fed. Rep. 49, 62, on a question between the parties of retaxation of costs, the clerk had disallowed the fees of a certain witness who had not been paid by the party in whose favor the taxation was had, and who had been paid in certain other similar cases; and Mr. Justice BLATCHFORD sustained the disallowance because the party claiming to recover for the fees did not show *that he had paid* the amounts to the witnesses; construing this statute to mean that the bill of costs could in this regard include only "the amount paid." The learned justice in his opinion says:

"If a party does not pay a witness either before or after he has testified, the presumption is that the debt is forgiven, unless the failure to pay is explained in such wise that the fee can be considered as if 'paid'; because both parties intend it shall be paid. Nothing of that kind here appears. Witnesses are

generally paid in advance, or at the time, or soon afterwards; and where, as here, they are paid in one or more cases, and not in others, the evidence is strong that they are never to be paid; especially where the lapse of time is so great as here between the rendering of the service and the taxation."

The witnesses making this application were not paid before judgment, nor have they been yet paid by the plaintiffs who summoned them, and the judgments were rendered some 18 months ago.

The law never intended that parties to a litigation in court should be allowed to make profit out of each other in the taxation of witness fees, and doubtless the provision in the statute just cited was to prevent any such practice. As to this item of witness fees, certainly, taxation probably means remuneration; and the argument is forcible that any other than the rule contended for by the defendant would open the door to careless, if not fraudulent, practice, and tend to make litigation needlessly expensive; as the cost of credit witnesses would naturally be more readily incurred than that of cash ones. But this point need not be decided upon this application; for the other question that the witnesses cannot, in any event, have a standing in the court to make this motion, is conclusive of it. If they have been paid by the prevailing parties, they have no cause to complain; if they have not, they must look to the plaintiffs for payment, and proceed against them in some proper manner, either here or elsewhere, as they may be advised; though as to this no opinion is expressed, as it is sufficient here to hold that they cannot in this way, nor at all, proceed against the opposite party for their fees.

A practice founded, no doubt, on the early North Carolina cases cited by counsel, has grown up in our state courts in Tennessee of treating the fees due to the officials, the printer, witnesses, etc., as the debt of the party losing as to costs; as due directly from him to the officer, printer, or witness, and taxable in judgment for costs, without the least reference to the fact whether they have been paid by the party at whose instance they were incurred or not. *Carter* v. *Wood*, 11 Ired. 22. This comes of doing the work of litigation on a credit. It is very convenient for the parties, plaintiff or defendant, to have it done that way, but it requires only a moment's reflection to see that the practice is subversive of the legal principles that govern costs, as between party and party, and inimical to the just rights of those who perform the service, whether officers or witnesses. If, by the silent force of obedience to law, either party can, upon the service of a subpœna, secure the attendance of a witness and his testimony, without payment in cash of the legal fee for it, upon the tacit understanding that the witnesses will look to the final judgment as to costs for the payment, it is not wonderful that both sides resort to this course, and come to think that they may be so relieved of the burdens and expenses of litigation *as a matter of right*. But in fact it is only a good-natured indulgence. Most men care nothing for witness fees, and cheerfully obey a subpœna without question concerning them. If they think of it, or attention be called to it, they will prove their attendance formally, and await the final judgment for costs. Per-

haps that is the last they think of it, and they never return to the parties or the court to collect the fees due them, and the amounts go into the pockets of the officers, or sometimes, by statute, into the public coffers. Other men do care for these fees, and collect them closely when the execution comes in or the judgment is otherwise paid. Yet other men, sometimes needy, somewhat like professional jurors, are always on the *qui vive* for service as witnesses in relation to the things they know, and these like to build up claims for attendance, and conduct the business to make the most money. Thus litigating upon a credit fosters these evil tendencies, and encourages litigation of a purely speculative character, and has all the ill effects of other indulgences upon credit.

But it only needs the test of some application like this, or the inexorable demand of some witness sufficiently informed as to his right to have his fees paid *in advance*, or in cash when the service is over, to demonstrate that his own debtor is the party who summoned him, and not the contingent loser of the suit; that he is not compelled to obey the subpœna—and this he does not always know, and the party does not take pains to communicate—unless the fees are paid in cash; and that he·is not bound to serve as a witness upon a credit, taking to himself all the risk of litigation, and await judgment for costs against a remote party, a stranger to the transaction with him, and possibly an insolvent. But that these risks properly belong to the party who needs his services; that it is the duty of that party to pay for them the legal fees, as for any other service he needs in his business affairs, and in the end to *himself* take the judgment for these expenditures against his adversary, if that adversary lose the case, and collect *his* costs,—there is no doubt. The same principle applies to the officials, unless upon the pauper's oath they be compelled to work for nothing, and not more than a witness can they be forced to await judgment against the losing party. They·do this, in our practice, partly from policy, mostly from habit; but, nevertheless, the doing of it is purely voluntary, and only an indulgence, like any other credit for a service rendered.

Nor does the giving of a cost-bond alter this essential and fundamental law of costs. That is given *to the party* to the suit, and for *his* protection. Technically the officers and witnesses are not parties to the bond; cannot, except by statutory regulation, sue or move upon it; and have no concern in it, only that, by equitable substitution, they are entitled to its benefits; and many statutes are made to protect them in this right of substitution by giving them a summary and easy method of realizing the security. This is the theory of the statutes, but in practice the indulgences already referred to have grown into the habit of making the reliance upon the *secondary* liability thus established, that which is the chief reliance, to the exoneration of that *primary* liability of the party in whose behalf the service is rendered; until,·in the state practice, the officers and witnesses do not resort to the principal debtor, unless they have exhausted the security debtor, so to speak, and there is a *nulla bona* return for costs; when, by a statutory motion over against the party who originally employed them, and was bound to pay them at the time of

employment, they get a judgment against him which they might have had cumulatively by going before a justice of the peace, and suing for their *fees*, not *costs*, in the first instance, if the demand for their payment were neglected or refused.

I have thus called attention to the law of costs in this regard, so that it may be understood that in our federal practice the acts of congress proceed upon the fundamental, essential, and common-law doctrines and distinctions as to fees and costs, and their language plainly indicates that any departure from these doctrines is contrary to the statute itself, whatever may be thought of the state statutes, which, in my judgment, however, are substantially the same when we eliminate the mere indulgences of practice, and distinguish between the rights growing out of those indulgences and the technical, strict, and legal rights that grow out of the laws of fees and costs, as found in the statutes themselves, which regulate the subject. Application refused.