## BUILDING & LOAN ASS'N OF DAKOTA v. LOGAN et ux.

### (Circuit Court of Appeals, Fifth Circuit. January 29, 1895.)

#### No. 334.

1. PRACTICE—CROSS APPEALS.

   Cross appeals must be prosecuted like other appeals, and an assignment of error by an appellee cannot be considered unless an appeal has been regularly taken by him.

2. HOMESTEAD—EXTENT OF CLAIM—TEXAS CONSTITUTION.

   The constitution of Texas (article 16, § 51) provides that "the homestead in a city * * * shall consist of lot or lots * * * used for the purpose of a home or as a place to exercise the calling or business of the head of a family." J., a married man and head of a family, was in possession of a lot of land, and carried on a laundry business thereon. The principal part of the buildings on the premises stood on the north 35 feet of the lot, but portions extended onto the south 40 feet, on which was also a spring from which water was obtained for use in J.'s business. The south 40 feet was not otherwise used, except for storing wood and coal, but the whole lot was inclosed with a fence. *Held,* that J.'s homestead included the whole lot, and that the homestead claim was not released, as to the south 40 feet, by tearing down the parts of the buildings standing on it for the purpose of erecting a new building, which was at once erected, and used in connection with the old.

3. SAME—CONTRACT TO CHARGE HOMESTEAD FOR IMPROVEMENTS.

   Under Const. Tex. art. 16, § 50, providing that a homestead is exempt from forced sale except for purchase money, taxes, or work and material for improvements thereon "contracted for in writing, with the consent of the wife, given in the same manner as is required in making a sale and conveyance of the homestead," it is not sufficient, in order to charge the homestead with the lien of a mortgage given to secure a loan for the purpose of making improvements, that the wife should join in the execution of the mortgage, but she must also join in the actual contract for the improvements.

4. CONTRACTS—LAW OF PLACE—USURY.

   A bond executed and delivered in one state, but made payable in another, is governed, as to the objection of usury, by the laws of the latter state, unless such place of payment was fixed for the purpose of evading the usury laws.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This was a suit by the Building & Loan Association of Dakota against William J. Logan and Minnie Logan to foreclose a lien by a deed of trust. The circuit court rejected the claim of lien, but rendered a personal judgment against the defendants. Complainant appeals. Modified and affirmed.

James W. Brown and C. W. Starling, for appellant.

A. T. Watts and J. C. Muse, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

BRUCE, District Judge. This suit was instituted by appellant, a South Dakota corporation, against appellee, a citizen of the state of Texas, to foreclose a lien by deed of trust executed by defendants William J. and Minnie Logan on a lot or parcel of land in the town of Dallas, Tex. The defenses interposed are usury to the debt and homestead to the lien asserted, which complainant seeks to foreclose upon the property. There is also a question as to the claim of a vendor's lien upon the property, evidenced by an outstanding note for purchase money of the property at the time the deed of trust was executed. It is claimed, by way of cross assignment of error by respondents, that the court below erred in allowing this claim against the property, and subrogating the complainant to the vendor's lien as claimed. The record, however, though it shows a cross assignment of error, nowhere shows the taking of an appeal by the respondents from the decree of the court. The prayer for appeal is by the complainant on the 10th day of July, 1894, and was on that date allowed with security in the sum of $250. So that the question of the decree of the court for the $1,000 note is not before us on this appeal. Clark v. Killian, 103 U. S. 766, in which the court declines to consider errors assigned by appellee; and Farrar v. Churchill, 135 U. S. 610, 10 Sup. Ct. 771, where the court holds that cross appeals must be prosecuted like other appeals, and says, when a cross appeal is allowed by a justice of this court, the petition and order of allowance must be filed in the court below, in order to the due taking of the cross appeal under the statute.

Upon the question of homestead, the constitution of Texas (article 16, § 51), among other things not material to this cause, provides that:

"The homestead in a city, town or village, shall consist of lot or lots, not to exceed in value $5,000, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home or as a place to exercise the calling or business of the head of a family."

The evidence shows that at the time of the execution of the deed of trust, February 15, 1890, and before and after that date, the respondent William J. Logan was in the possession, use, and occupation of the lot or parcel of land, continuously carrying on a laundry business there; that he was a married man, and the head of a family. The petition for foreclosure was amended after the commencement of the suit, and the south 40 feet of the lot, fronting on Poydras street only, was claimed as subject to the lien under the trust deed. Complainant's proposition is that the north portion of the lot was claimed by Logan as his homestead, and declared by him and his wife in writing to be such, and that the south 40 feet was not claimed as such homestead, so that the respondents are now estopped from setting up that defense. The fact is, however, that the premises were in actual use and occupation, as heretofore stated. They were examined by an agent and attorney of complainant before the mortgage was executed, who must have seen, if he made an examination with care, that the

buildings or the wings of the frame building which stood on the north 35 feet of the lot were upon the south 40 feet, with a spring of water upon it, used by respondent in his laundry business; and, while the other portion of the south 40 feet of the lot was not in actual use for any purpose at the time, yet it had been used for storing coal and wood for the business, and had at that time a board fence inclosing it with the other part of the lot.

It is not the question as to what Logan agreed to do in a matter of this kind; the question is. what was done in point of fact to divest this property of its homestead character, and release it from such claim? It requires not only Logan's agreement, which he might make one day and retract the next, not even a release on paper, though signed by his wife as well as by him, but what acts were done and performed which released the lot from the claim and use of a homestead. If it is said the removal of the wings of the frame building afterwards operated to release the south portion of the lot from the homestead claim, the answer to that is that the removal of these structures was to make way for the erection of the new building, which new building was, before it was finished, occupied and used in connection with the old one in carrying on the respondents' laundry business; so that we do not find that the homestead claim was ever released.

But it is claimed that this loan was made for the improvement of the property, and, under the constitution of the state of Texas, the property is not protected from forced sales upon this character of claim. The constitutional provision is article 16, § 50:

"The homestead of a family shall be. and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead. * * *"

Without reference now to the stock feature of the transaction, it was a loan of money from the complainant to the respondent Logan, and the testimony does not show what amount of the loan actually went into the improvement and building erected thereon; but, if that was shown, the transaction would not be within the language of the constitution, which requires that the wife shall be a party, not merely to the deed of trust to secure the loan of money, but that she shall be a party to the contract under which the improvements are made,—in other words, that her formal consent must be had to the character and quality of the improvements to be made thereon; otherwise she would be liable to be improved out of her homestead, as it is called, and the purpose of the constitutional provision be defeated.

The next question is that the contract sued on is usurious, and that, under the law of Texas, all payments of interest thereon are to be applied upon the principal. It is to be observed, however, that the suit is upon a bond conditioned for the payment of money, and that the question of its being a lien upon real estate in the state of Texas is, in the view we take of it, now out of the case.

The complainant is a building and loan association, organized and acting under the laws of the state of South Dakota; and its methods and rates, its premiums and interest exacted, are all regulated by the laws of that state, which, as we understand, permit exactly the contract sued on in this case. See Laws Dak. 1885, p. 56 et seq.; Laws Dak. 1887, p. 81 et seq. The bond and deed of trust sued on, construed in reference to these laws and the by-laws of the corporation, found in the record, are in all respects regular and lawful. Section 6, p. 58, of the Laws of 1885, particularly provides that "no premiums, fines or interest on such premiums that may accrue to the said corporation, according to the provisions of this act, shall be deemed usurious, and the same may be collected as debts of like amount are now by law collected in this territory." The bond in this case is expressly made payable in Aberdeen, in South Dakota, and the deed of trust is to the same purport.

In Sturdivant v. Bank, 9 C. C. A. 256, 60 Fed. 730, this court held that a note executed and delivered in one state, and payable in another, is governed, as to the admissibility of defenses against an indorsee, by the law of the latter state, even when sued on in the state where it was executed; citing authorities, among which is the case of Miller v. Tiffany, 1 Wall. 298, which holds that:

"A person contracting for the payment of interest may contract to pay it either at the rate of the 'place of contract,' or at that of the 'place of performance,' as one or the other may be agreed on by himself and the creditor; and the fact that the rate of the place at which it is agreed that it shall be paid is higher than the rate in the other place will not expose the transaction to the imputation of usury, unless the place agreed on was fixed for the purpose of obtaining the higher rate, and to evade the penalty of a usurious contract at the other place."

As it appears that the complainant, a Dakota corporation, was acting within its charter, and, as the record shows, in accordance with its by-laws, and as there is no evidence whatever in the record tending to show that the place fixed for the payment of the bond in this case was for the purpose of obtaining any higher than the usual rate, or to evade the penalty of a usurious contract in Texas, it would seem that these authorities are fully applicable, and dispose of the question of usury in this case.

Counsel for appellant, in their very able brief presented to this court, say they do not contend that the laws of South Dakota have any extraterritorial force; but they submit that such laws govern the appellant's affairs in their system of accounting, and they also submit that section 1 of article 9 of appellant's by-laws, as follows: "Should a member whose property is mortgaged, or whose shares are pledged to the association, desire to release the same by prepayment of his indebtedness before maturity, he may, on application to the board of directors, be allowed to do so, and the directors shall give him an equitable rebate on the premium paid by such member,"—regardless of any other reason, makes the loan one which is not usurious, and one to which this court may apply the rules of equity in relation to this class of contracts. We quote further:

"How, then, shall a court of equity determine the amount due on this contract? Six per cent. on the amount loaned, being the legal rate in Texas, and being the contract rate made by the parties, and being recognized as a fair rate, is certainly a proper rate to apply. Is the borrower entitled to the application of any credit upon his loan for the amount paid upon his dues? Ordinarily no, as the lender has failed to comply with the conditions governing the withdrawal of his stock. In this case, however, the appellant waives any such formalities, and concedes that the borrower is entitled to a credit equal to the withdrawal value of such stock, and contends that this is the extent of the credit to which he is entitled. This value can be ascertained from the provisions of the stock certificate."

If the contract is not usurious,—and we hold that it is not,—the above method of ascertaining the amount due is not unfair to the debtor, and we are disposed to adopt it.

The remaining question is as to insurance paid by complainant. As the deed of trust specifically provides that the premises shall be kept insured, and, in case of default made by the mortgagor, the same should be performed by the appellant, and all expenses incurred in so doing should be paid by the mortgagor, with interest at the rate of 12 per cent. per annum from the date the same was incurred or paid, and as the record shows that thereunder the appellant has paid the sum of $745.69 insurance, we are of opinion that the court below erred in not including that amount, with interest, in the personal judgment rendered against William J. Logan.

The decree of the circuit court appealed from is reversed in so far as it declares the bond sued on usurious, and in so far as it restricts the judgment in favor of the Building & Loan Association of Dakota against William J. Logan to the sum of $4,361.50; and the cause is remanded, with instructions to the court below to enter a judgment in favor of the Building & Loan Association of Dakota against William J. Logan for the sum of $7,500, together with interest thereon at the rate of 6 per centum per annum from January 1, 1892, together with the sum of $745.69, paid for insurance, with interest thereon at the rate of 12 per centum per annum from the respective dates upon which the payments were made, aggregating a sum of $9,805.50, less the withdrawal value of said shares of stock, said value being $1,606; the same aggregating, after deducting the aforesaid credits, the sum of $8,199.50, the same to bear interest at the rate of 6 per centum per annum from date of filing mandate. The decree of the court below is affirmed, except as above reversed and modified, with costs in this court, and the court below against appellee, William J. Logan.