## GUARANTEE SAVINGS, LOAN & INVESTMENT CO. v. ALEXANDER et al.

*(Circuit Court, D. South Carolina. July 26, 1899.)*

BUILDING AND LOAN ASSOCIATION MORTGAGES—USURY—PLACE OF CONTRACT.

A resident of South Carolina made application through a local agent for membership in a building and loan association having its place of business in Washington, D. C., for the purpose of obtaining a loan from said association. The application was forwarded to Washington, where it was accepted, and the certificates for shares issued. An application for a loan was made in a similar manner, was accepted in Washington, where the notes were made payable, and the loan was secured by mortgage on real estate in South Carolina. *Held*, there being at the time no statute on the subject in South Carolina, that the contract was a Washington contract, and not subject to the usury laws of South Carolina, and, being valid, and not usurious, under the laws of the District of Columbia, the mortgage would be enforced.

In Equity. This was a suit in equity for the foreclosure of a mortgage, the defense being a plea of usury.

Dargan & Coggeschall and Willcox & Willcox, for complainant.

Boyd & Brown, H. E. Young, and E. O. Woods, for defendants.

SIMONTON, Circuit Judge. This bill has been filed for the foreclosure of a mortgage on real estate situate in the town of Darlington, S. C. The complainant is a corporation created by the laws of the state of West Virginia, originally under the name of the Guarantee Building & Loan Investment Company, which name, however, was changed to that in the title of this case. Its principal place of business is in the city of Washington, in the District of Columbia. This corporation is a building and loan association in this respect: The maturity of the contract is guarantied to be 10 years from its date, and is not dependent upon the business or on the termination of the existence of the company. The principal defendant, a citizen of the state of South Carolina, resident in Darlington, being desirous of the privilege of borrowing money from the complainant, applied for such membership, and subscribed for 30 shares of capital stock in the corporation. Under the terms of the subscription she agreed to pay each month for 120 months the sum of 50 cents per share, and also to abide by the rules, regulations, and conditions in the by-laws of the corporation. Upon fulfillment of this agreement, the company guarantied to pay her at the end of this period the matured value of the said stock, to wit, $100 per share. She was admitted into the corporation, paid the sum of $30 admission fee, and for two months paid the 50 cents per share on each of the 30 shares of stock. Carrying out her purpose on becoming a corporator, she applied to the complainant for a loan. Being the subscriber for 30 shares, she could have applied for $3,000.

For some reason, satisfactory to both parties, she applied for $2,500, and her holdings of stock were reduced from 30 to 25 shares. The applications for the stock and for the loan were made through an agent of the company resident in Darlington, the appointee of a local board; were by him transmitted to the officers of the company in Washington, D. C., and were considered and determined upon by them, and only after such determination went into effect. In the by-laws, rules, and regulations of this company a loan is treated as an advance of the prospective paid-up value of the shares. When such loan has been obtained, the subscriber borrowing must give security for the return thereof at the end of 120 months; must also secure the payment of interest thereon in monthly installments at the rate of 6 per cent. per annum; must also secure the payment of a premium for obtaining said advance in monthly installments for 120 months, at the rate of 6 per cent. per annum; and the same security must protect the monthly payments upon the shares of stock, which shares must also be assigned as collateral security for the loan. The defendant obtained the advance of $2,500 on the 25 shares retained by her, executed 119 notes, with her husband as surety, each for $37.50, the first of which was due and payable at the office of the company in Washington, D. C., on the first business day in January, 1895, and the others, for the same amount, falling due successively on the same days in each successive month thereafter. The $37.50 was made up by the 50 cents on each share, in all $12.50; by the monthly installments for premium at the rate of 6 per cent. per annum, $12.50; and the monthly increments of interest at the same rate, $12.50. Her shares of stock were assigned as collateral security, and then, as final security for all the advance, she executed the mortgage set out in an exhibit in the pleadings. The mortgage provided for the payment of the principal (share payments), interest, and premium on the advance represented in these 119 notes, all fines and penalties imposed pursuant to the by-laws, all taxes accruing on the property, and all premiums of insurance,— the amount of which insurance was fixed at $2,500. If the mortgagor did not pay any tax or premium of insurance, the company mortgagee could do so, and hold for its reimbursement the mortgage as security. The mortgage was duly executed and recorded. The mortgagor paid six of these notes, and then made default, paying no other. She also omitted to pay the taxes on the property for the year 1897–98, and also a premium on the policy of insurance. Thereupon this bill of foreclosure was filed, to which Mrs. Alexander and her husband and certain lien creditors were made parties defendant. The answers are in. That of the principal defendant, Mrs. Minnie C. Alexander, admits the main facts, and sets up the plea of usury. This is the question in the case, is this contract usurious? The complainant is the creature of the laws of West Virginia. Its place of business is in Washington, D. C. The defendant resides in South Carolina. The contract was negotiated through an agent of the company resident in Darlington, the residence of Mrs. Alexander, and the notes which were paid were paid to him. The mortgage is dated December 1, 1894. Under its

charter the complainant had the right to make the contract in question. By the laws of West Virginia such a contract is not usurious. Code W. Va. 1891, c. 54, par. 26. In the District of Columbia, where the company has its principal place of business, a contract like this, securing premiums for a loan by an association of this character, is not usurious. 27 Stat. c. 321, par. 1; Mulloy v. Association, 2 McArthur, 594. Under the law of South Carolina, as laid down by its supreme court, such a contract as this, made in this state, would be held usurious. Association v. Bollinger, 12 Rich. Eq. 124; Association v. Dorsey, 15 S. C. 462; Buist v. Bryan, 44 S. C. 124, 21 S. E. 537; Mearres v. Finlayson (S. C.) 32 S. E. 986. The law of South Carolina seems to be this: A stockholder in a building and loan association, so long as he holds his stock simply as an investment, can go on, and pay his monthly dues, subject to the by-laws of the company. When the period for distribution comes, he can enjoy all the privileges given by his stock subscription. But if, not content with waiting on his investment, he obtains from the company money in præsenti,—anticipates the probable value of his stock,—he stands in the position of an ordinary borrower. If the corporation advances this money, charges a lawful rate of interest thereon, and, in addition thereto, charges a premium, either by taking it out of the money lent or advanced or in installments during the currency of the loan, and thereby obtains for the use of the money an amount greater than a lawful rate of interest, this will subject the loan to the plea of usury. If the contract of loan be between citizens or residents of South Carolina,—be a South Carolina contract,—it is subject to the law of that state against usury. If, however, it be not a South Carolina contract, and if the law of the state in which the contract was made permit loans of that character, then, by comity, the courts of South Carolina will enforce the contract notwithstanding. Association v. Vance, 27 S. E. 274, 29 S. E. 204, and 49 S. C. 402; Tobin v. McNab, 30 S. E. 828, 53 S. C. 73. If the contract be made in another state, and by the laws of that state would be held usurious, then the courts of South Carolina, in an action brought upon it, would apply the laws of South Carolina, and would subject the lender to the same penalties as would be enforced were it a South Carolina contract. Meares v. Finlayson, 55 S. C. 105, 32 S. E. 986. The act of 1898, making all contracts with building and loan associations South Carolina contracts, does not apply to contracts like this at bar, made before the passage of that act. Tobin v. McNab, supra; Association v. Powell, 55 S. C. 316, 33 S. E. 355. The decisive question in the case therefore is, was this contract made in South Carolina or in the District of Columbia? The application for membership in the complainant's corporation was made with the intent and purpose of obtaining this loan. This application was made to the company at its office in Washington, was considered and granted there. The certificate of stock—the result of the application, and the basis of the loan— was signed and issued in Washington. The application for the loan was prepared in South Carolina, but it was forwarded to the company in Washington, to be passed upon. Until it was passed

upon and accepted, it was no contract. It was accepted in Washington, and so the contract was completed and made in Washington. 7 Am. & Eng. Enc. Law, 136; Shattuck v. Insurance Co., 4 Cliff. 598. Fed. Cas. No. 12,715. The notes given for the loan were made payable at the company's office in Washington on the first business day in each successive month; that is to say, if the first calendar day were a holiday, then on the first business day thereafter. As public holidays are largely matters of local law, the maturity of those notes was made dependent on the local law of the District of Columbia. The checks for paying the loan were drawn in and sent from Washington, and were made payable in New York. Mrs. Alexander and her husband, her agent in this behalf, must be presumed to have known and to have understood the natural result of their own acts. It seems impossible to escape the conclusion that this contract was a contract made in the District of Columbia, and not a South Carolina contract. Association v. Bedford, 88 Fed. 15.

It would enlarge this opinion beyond a reasonable length to go into the wilderness of cases upon the question of the lex loci contractus. The conclusion reached is sustained in principle by the supreme court of the United States in Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102. affirmed in Coghlan v. Railroad Co., 142 U. S. 101, 12 Sup. Ct. 150. and is on all fours with the decision of the supreme court of Pennsylvania in Bennett v. Association, 177 Pa. St. 233, 35 Atl. 684; and it is the same conclusion which was reached by the supreme court of South Carolina in cases like that at bar in Association v. Vance, 27 S. E. 274, 29 S. E. 204, and 49 S. C. 402, and in Tobin v. McNab. 30 S. E. 828. 53 S. C. 73. The plea of usury is overruled. It is ordered that the special master compute the amount due in accordance with this opinion upon the mortgage set out in the pleadings. and report the same to this court, upon which complainant may take decree for foreclosure.