UNITED STATES SAVINGS & LOAN CO. v. HARRIS et al.

(Circuit Court, E. D. Kentucky. January 27, 1902.)

1. BUILDING AND LOAN ASSOCIATION—LOAN IN ONE STATE TO A CORPORATION OF ANOTHER—PLACE OF PAYMENT—CONTRACT—LAW WHICH GOVERNS.

Where a building and loan association incorporated in Minnesota makes a loan to a member residing in Kentucky, secured by a mortgage on his real estate in the latter state, all payments of interest and principal

to be made at the home office of the association in the former state, the contract is governed by the laws of Minnesota.

**2. SAME—USURY—EVASION OF LAW.**

Where a contract of loan made between a building and loan association of one state and a resident of another state, and secured by mortgage on his real estate therein, is valid under the laws of the former state, but usurious under the laws of the latter state, the fact that the place of payment is fixed at the home office of the association should not be construed as an evasion of the usury laws of the state where the property is situated.

**3. SAME—FEDERAL COURTS—LAWS OF STATE—DECISIONS OF STATE COURT.**

Under Rev. St. U. S. § 721, requiring the federal courts to be bound by and enforce the laws of the state in which the court is sitting, such a court is not bound, against its own judgment, to follow the decisions of the highest court of such state, in determining the question as to what law governs a contract of loan between a building and loan association of one state and a member residing in the state in which the court is sitting, secured by mortgage on land in the latter state; the adjudications of the state court on the subject not being based on any local statute, or constituting a rule of property situated within the state, which the federal court is bound to follow.[1]

**4. SAME—CONTRACT MADE PRIOR TO DECISION OF STATE COURT.**

Where a building and loan association makes a loan and takes a mortgage on land in another state, the contract being valid in the state of the domicile of the corporation, and after the loan is made the supreme court of the state in which the land is situated decides, in a suit between other parties, that such contracts cannot be enforced in such state because usurious, a federal court in that state, in an action to foreclose such mortgage, is not required to follow such decision when it believes the decision to be wrong.

Beckner & Jonett, for complainant.

Geo. B. Kinkead and Morton & Darnall, for defendants.

COCHRAN, District Judge. Plaintiff is a Minnesota corporation, authorized to transact the business of a mutual building and loan association according to the usual plan of operating such institutions. July 30, 1892, defendants, residents of Kentucky, subscribed for 60 shares of stock, of par value of $100 each, to be paid for in monthly installments of 60 cents per share. August 30, 1892, they borrowed $3,000, and gave their note therefor, bearing 6 per cent. interest, payable monthly, secured by mortgage on certain real estate, and by collateral assignment of 30 shares of said stock. The other 30 they assigned to it absolutely, as premium for the loan, and thereupon those shares ceased to exist, save as a measure of the monthly installments of premium. To the extent of the 30 shares assigned as collateral security, they were entitled to participate, proportionately with the other stockholders, in the net earnings of the company. Their portion thereof was not payable to them in cash, but was to be applied in maturing the stock, and upon its maturity they had a right to have their loan canceled and mortgage released. All other borrowers were upon the same footing exactly, and the only difference, as to nonborrowers, was that upon maturity of their stock, they were entitled to payment of same in cash. After lapse of three

---

[1] State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

years from date of loan, defendants had the option to pay it and acquire the status of a nonborrower, and, if they failed to meet installments of dues, premiums, or interest for three months continuously, plaintiff had the option to close their account on a stipulated basis, and sue for balance due. Defendants paid the installments of dues, premium, and interest as they became due, with more or less regularity, and some fines for tardiness, until June, 1896, when they ceased paying entirely. Plaintiff admits that up to that time defendants paid in all $1,797. Defendants contend that they paid $1,899. December 3, 1896, plaintiff exercised its option to close the account, and on December 8, 1896, ascertained the amount due it to be $3,158.90, for which, with interest from that date, this suit was brought. If the transaction had been a loan of money, and nothing more, and the payments made had been applied on the loan in accordance with the principle in partial payments, it would have been reduced to an amount under $2,000, instead of having $158.90 added to it. This bad showing is attributed by plaintiff to losses caused by shrinkage in value of real estate taken in satisfaction of loans, by the refusal of the courts of certain states, including Kentucky, to enforce its contracts as made, and by legal expenses in foreclosure suits. The defense is that the real nature of the transaction between plaintiff and defendants was a loan of money, pure and simple, and all else in its form, other than that, was an artifice to cover usury, and that therefore the amount due from defendants to plaintiff should be ascertained on that basis. This defense presents a question in the choice of laws. It does so because the transaction involved herein contains elements belonging to two separate jurisdictions, to wit, the states of Kentucky and Minnesota, and the laws of those jurisdictions as to transactions of a similar character, entirely local, are different. The real estate mortgaged is situated in Lexington, Ky. Possibly defendants' contract was made there. The supreme court of Tennessee, however, has held that an exactly similar contract of another with plaintiff, made under somewhat the same circumstances, was made in Minnesota. Loan Co. v. Miller (Tenn. Ch. App.) 47 S. W. 17. And certain of the federal circuit courts have held that similar contracts of others with other associations, made under somewhat the same circumstances, were made in the states where the offices of those associations were located. Association v. Bedford (C. C.) 88 Fed. 7, 12; McIlwaine v. Iseley (C. C.) 96 Fed. 62, 68; Investment Co. v. Alexander (C. C.) 96 Fed. 870, 872, 873. But it is not essential to dispose of this question in this case. On the other hand, defendants' contract was to be performed in Minnesota by the payment of the installments of dues, premium, and interest at its office in St. Paul, or at that of its trustee in Minneapolis. The difference in the laws of these two jurisdictions is this: By the law of Minnesota, as to such a transaction entirely local, its real nature and form square, and the contract, as made, is valid in all its parts. In the case of Association v. Lampson, 60 Minn. 424, 62 N. W. 545, Start, C. J., said:

"The respondent, then, upon this appeal, is to be regarded as a mutual building and loan association, doing a local business, and as such it is not

subject to the usury laws of this state by reason of excess of premiums contracted to be paid by its members to it on a loan to them over the rate of interest permitted by law. * * * But to entitle mutual building and loan associations to the benefit of this exemption from the usury laws, they must conduct their business in good faith, and loan their funds only to bona fide members. They cannot loan their funds to strangers upon usurious terms, practically exclude them from participating in the advantages and profits of the mutual system in which outlay and return are intimately blended, and then claim the benefit of the statute as a cover for the transaction. Otherwise they would become simply associations of legalized usurers, availing themselves of the privileges and exemptions of the statute intended only for strictly mutual building and loan associations."

This is in accordance with the law of a large majority of the jurisdictions of this country. By the law of Kentucky, as to such a transaction entirely local, it is nothing more than a loan of money at a usurious rate of interest, and the contract as made is not enforceable. Authorities which may be cited as so holding are as follows, to wit: Herbert v. Association, 11 Bush, 296; Gordon v. Association, 12 Bush, 110, 23 Am. Rep. 713; Association v. Johnson, 88 Ky. 191, 10 S. W. 787, 3 L. R. A. 289; Simpson v. Association, 101 Ky. 496, 41 S. W. 570, 42 S. W. 834. In the Herbert Case the loan was to a member of the association, but upon its being made he ceased to be such, and his sole relation thereto thereafter was that of a debtor. In the Gordon Case the loan was to a stranger. In the Johnson and Simpson Cases the loans were to members who continued to be such after becoming borrowers, and borrowers and nonborrowers shared alike in the earnings and losses of the institution. The decisions in the two former cases, though not relevant, had much to do with shaping the decisions in the two latter. In the Johnson Case, Pryor, J., said:

"A loan to members at the legal rate of interest, with reasonable dues for the maintenance of the organization, could not be held usurious; but such power as is conferred on the corporation in this case, or upon its members, in the loan of money evidenced by the transaction in question, devests the appellant of its benevolent character, and converts it into an organization under the forms of law for the purpose of filling its treasury by imposing oppressive burdens on its members, who have been solicited to become the objects of its benevolence."

And in the Simpson Case, Hazelrigg, J., said:

"This court has had under consideration the relation of the member who had obtained money on his stock in these associations bore to the association, and we have invariably held that relation to be a borrower of money, merely."

As before stated, this distribution of the elements of the transaction involved herein between the two states named, and this difference between their laws as to transactions of a similar character, entirely local, necessitates a choice by this court between those laws, as to which shall control it in disposing of the defense made herein. Before making such choice, however, it has to be considered whether the court is free to act in accordance with its own judgment, and, if so, which law should be chosen. The latter consideration will receive attention first. If this were a case of an ordinary obligation to pay money and interest thereon, made in Kentucky, but payable in Minnesota, and without any mortgage to secure it, the interest

agreed to be paid would be upheld, if valid under the law of Minnesota. In the case of Andrews v. Pond, 13 Pet. 65, 78, 10 L. Ed. 61, Mr. Chief Justice Taney said:

"The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and, if the interest allowed by the laws of the place of performance is higher than that permitted at the place of the contract, the parties may stipulate for higher interest without incurring the penalties of usury."

In the case of Miller v. Tiffany, 1 Wall. 298, 17 L. Ed. 540, Mr. Justice Swayne quotes this language with approval, and adds:

"The converse of this proposition is also well settled. If the rate of interest be higher at the place of the contract than at the place of performance, the parties may lawfully contract in that case, also, for the higher rate."

And in the case of Junction R. Co. v. Bank of Ashland, 12 Wall. 226, 20 L. Ed. 385, Mr. Justice Bradley said:

"With regard to the question what law is to decide whether a contract is or is not usurious, the general rule is the law of the place where the money is made payable, although it is also held that the parties may stipulate in accordance with the law of the place where the contract is made."

To the same effect are the cases of Scotland Co. v. Hill, 132 U. S. 107, 10 Sup. Ct. 26, 33 L. Ed. 261; Coghlan v. Railroad Co., 142 U. S. 111, 12 Sup. Ct. 150, 35 L. Ed. 951.

The fact that it was secured by mortgage on real estate in Kentucky would not make any difference. In the case of De Wolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343, suit was brought in Kentucky to enforce a mortgage on real estate therein, given to secure a note executed, and perhaps payable, in that state. It was set up as a defense that the note was a renewal of another note, containing usury. That note had been made and was payable in Rhode Island, but when given it was stipulated that it should be secured by conveyances of land in Kentucky, which seem never to have been made. The question was as to which state's law should govern in determining the effect of usury in that note. Mr. Justice Johnson said:

"With regard to the locality of the contract of 1815, we have no doubt that it must be governed by the law of Rhode Island. There is nothing that can raise a question but the circumstance of its making a part of the contract that it should be secured by conveyances of Kentucky land. But the point is established that the mere taking of foreign security does not alter the locality of the contract with regard to the legal interest. Taking foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfillment of a contract of loan on the part of the borrower is repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrowed, unless another place of payment be expressly designated by the contract. No tender would have been effectual to discharge the mortgage, unless made in Rhode Island. On a bill to redeem, a court of equity would not have listened to the idea of calling the mortgagee to Kentucky in order to receive a tender."

The case of Miller v. Tiffany, supra, was a suit in the circuit court of the United States for the district of Indiana to enforce a

mortgage on real estate in that state given to secure a note signed there, but delivered, upon receipt of consideration, in New York, and payable in Ohio. The interest stipulated for was usurious, according to the law of New York, but not according to the law of Ohio. It did not appear how it was as to the law of Indiana. It was held that the validity of the stipulation was to be determined by the law of Ohio, where the note was made payable.

Mr. Minor, in his work on Conflict of Laws (page 31), thus states the law:

"So, also, with respect to mortgages of land, though the mortgage itself must be such as will constitute a transfer of title under the lex situs, the question as to whether the debt secured thereby (if contracted in another state) is a valid consideration to support the mortgage (for instance, whether it is usurious) is to be determined by the law which governs the validity of the debt."

This would seem to be correct on principle. If a court will enforce an unsecured contract to pay interest because valid according to a foreign law, and thus render the obligor's real estate located within its jurisdiction liable to be subjected by execution or otherwise to the payment of such contract, there would seem to be no reason why it should not subject same to the payment thereof in pursuance of a mortgage, if the mortgage has been properly executed. The only significance that can be attached to a mortgage on real estate, in disposing of a question as to usury in the obligation to secure which it has been given, is as an aid in determining the place of performance when the obligation is silent on that point. Minor, Confl. Laws, p. 390; 2 Jones, Mortg. § 660. A limit, however, must be put upon what has been said as to upholding a contract to pay interest if authorized by the law of the place where the contract is to be performed. It will not be upheld if the fixing of the place of performance is a device to evade the usury laws of the place where made. But it is not such merely because by fixing that place the law of the place where made is in fact evaded. In the case of Van Vleet v. Sledge (C. C.) 45 Fed. 743, Judge Jackson said:

"McCollum states the matter too strongly when he says it was intended to evade the law of Tennessee. It was certainly intended to obtain the Arkansas, rather than the Tennessee, rate of interest. That intention was no violation or evasion of the law of Tennessee."

In order for the fixing of the place of performance in another jurisdiction than where the contract is made to be such a device, it is essential that the fixing of that place be a pretense and not bona fide. This is well brought out in Minor, Confl. Laws (page 379). He says:

"Paradoxical as it may seem, there is often more difficulty in determining the locus solutionis of a contract which expressly designates a place of performance, than where none is named. The reason is that the parties sometimes attempt to cover their real intentions touching the place of performance by falsely naming a place which they do not really intend to be the true locus solutionis. This is done in order to evade the law of the real place of performance, when it would condemn the contract. In such cases, where the locus solutionis is of importance, it is the duty of the court to disregard the false witness of the parties' contract, and to ascer-

tain the place of performance really intended. For though the parties have the right to choose bona fide the place where their contract is to be performed, they have not the right, in order to evade the law of the place they have really chosen, to pretend that they have selected a different place. Thus it has been held, by courts which take the view that the validity of usurious contracts is dependent upon the lex solutionis, that a debt falsely pretended to be made or payable in a particular state, so that usurious interest may be exacted under its law, will not be enforced. But the mere fact that the motive for selecting a particular place as the locus celebrationis or locus solutionis of a contract is to evade the law of another state is immaterial, if the choice is bona fide. The important point is that the parties have the right to select the locus. This being conceded, the reasons which induce them to make a particular choice are not open to inquiry."

The principles thus laid down as to ordinary obligations for the payment of money and interest thereon have been applied by the federal courts in a number of cases quite recently to transactions similar to that involved herein, and it has been uniformly held, with possibly one exception, that the nature and validity of the contract of the borrowing member is to be determined by the law of the state under which the association was organized, and at whose office in that state that contract was to be performed. The cases in the inferior federal courts so holding are as follows, to wit: Association v. Logan, 14 C. C. A. 133, 66 Fed. 827; Association v. Bedford (C. C.) 88 Fed. 7; Andruss v. Association, 36 C. C. A. 336, 94 Fed. 575; Investment Co. v. Alexander (C. C.) 96 Fed. 870; Association v. Rector, 38 C. C. A. 686, 98 Fed. 171; Hieronymus v. Association (C. C.) 101 Fed. 12; MacMurray v. Gosney (C. C.) 106 Fed. 11; Hieronymus v. Association, 46 C. C. A. 684, 107 Fed. 1005; Manship v. Association (C. C.) 110 Fed. 845; McIlwaine v. Ellington (C. C. A.) 111 Fed. 578. The case of Association v. Bedford was carried to the supreme court of the United States, and affirmed by it, in the case of Bedford v. Association, 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834. In a number of these cases, as above indicated, it was held that the contracts sued on were made, as well as to be performed, at the office of the association.

In the following cases the question as to the fixing of the place of performance in the foreign state being a device to evade the usury laws of the state where the real estate mortgaged was situated, and the suit to enforce the mortgage had been brought, was expressly referred to, and it was held that it was not, to wit: Association v. Logan, 14 C. C. A. 133, 66 Fed. 830; Hieronymus v. Association (C. C.) 101 Fed. 14. The fact is that in such transactions not only is the fixing of the place of performance at the office of the association in accordance with the real intention of the parties, but it is reasonable that that place should be so fixed. Thereby uniformity and equality amongst the borrowing members scattered through many states are secured, and the convenience of the association itself subserved. In none of these cases was the mortgage feature of the transaction considered as having any bearing upon the question as to which law was to govern. Indeed, it is rarely, if ever, referred to in that connection.

The sole possible exception to these cases is that of McIlwaine v. Iseley (C. C.) 96 Fed. 62. It arose in North Carolina, and was a

suit to enforce a mortgage on real estate in that state, given by a resident thereof, whose contract was made and to be performed, as the court held, at the office of the association, in Tennessee. The supreme court of North Carolina had theretofore held that such a transaction should be governed by its law as to similar transactions entirely local, and not by the law of Tennessee in relation thereto. Judge Simonton in that case held likewise. It is questionable whether he so held because the law of North Carolina was the proper law, or because he felt bound by the decisions of the state court that it was. Inasmuch as in the case of Investment Co. v. Alexander (C. C.) 96 Fed. 870, which arose in South Carolina, where there was no such obstruction,—the supreme court of that state having theretofore held in a similar case that the foreign law was the proper law,—he followed the decisions of that court, it would seem that the ground of his decision in the other case was that he felt bound by the North Carolina decisions.

We conclude, therefore, that if this court is free to make choice between the law of Kentucky and that of Minnesota in regard to similar transactions entirely local, as to which shall govern the one involved herein, the latter is the proper law. In reaching this conclusion, we have left out of consideration the fact, not heretofore stated, that it was expressly stipulated in the note and mortgage herein that they were "made with reference to and under the laws of Minnesota," the exact effect and significance of which we do not feel it necessary to determine. How, then, is it as to this court's freedom to make choice? The necessity for determining this question in this case arises out of the fact that the court of appeals of Kentucky, in the following cases, to wit: Association v. Harris, 98 Ky. 41, 32 S. W. 261; Loan Co. v. Scott, 98 Ky. 695, 34 S. W. 235,—has heretofore decided that the law of Kentucky as to similar transactions entirely local is the proper law to govern a transaction like the one involved herein. The plaintiff herein was the association in the latter of those two cases, and the transaction there involved was the same as here. In the Harris Case, Grace, J., said:

"This loan, however, was made not directly and in a straightforward, business manner, but with much circumlocution." And again: "And yet, in the face of these figures, which are incontrovertible, appellant insists that its contract is all legitimate and fair; that there is no fraud, no deception, and, stranger still, no usury; and this latter proposition he upholds by an elaborate brief, and by the citation of many authorities."

He characterizes the place of operation as a "cunningly devised scheme," and states that the usurious interest in it is "covertly concealed by the literal terms of the contract." On the question of the choice of laws he says:

"And by the adoption of many fictions he [appellant] says that, in any event, this transaction does not violate the usury laws of Kentucky. Among these fictions, he says this contract was made in Tennessee, although it was in fact made in Lexington, Ky.; and, so far as this record discloses, appellee was never in Knoxville, Tenn., in his life. The subscription for the stock (being the corner stone of this scheme) was made in Kentucky; the application for the loan written and signed here; the note dated, written, and signed here, and the mortgage made to secure the payment for this stock; and thus the payment of the loan made was written, dated, and executed,

acknowledged and recorded, in Fayette county, Ky. Yet appellant, by counsel, says that by intendment of law this contract was made at Knoxville, Tenn., and is a Tennessee contract, and that under and by the laws of Tennessee, as adjudged by the supreme court of that state, this transaction is not usurious. And, further, appellant contends that, by comity between the states, this contract, being valid and free from usury in Tennessee, must be enforced in Kentucky. * * * On this question of comity, and on the assertion that this contract is all valid, and not usurious, by the laws of Tennessee, we desire again to submit the views of this court in reference to these transactions, as was set forth and announced in the case of Association v. Johnson, 88 Ky. 191, 10 S. W. 787, 3 L. R. A. 289. * * * In that case the court held that transactions of that character were in violation of the fundamental law of the land."

On the same subject, Hazelrigg, J., in the Scott Case, said:

"A foreign building and loan association engaged in doing business in Kentucky will be permitted to charge no higher rate of interest than is chargeable under the laws of this state, and while, by the laws of comity, the charter of such a corporation will be recognized here as the law of its existence, it is the charter alone which is recognized, and not the general legislation of the country of its domicile with reference thereto, or the constructions of its charter provisions by the foreign courts. Moreover, when such a corporation employs the usual agencies to solicit and transact business in this state, and contracts for the payment of premiums and interest in excess of the rate authorized here, the transaction will be denounced as an attempted evasion of our laws, whatever may be the nominal rate specified or artifice adopted; and this though it be specifically provided that the contract is made with reference to the laws of the foreign state. Such a provision only makes the intent to evade more manifest. The principles underlying these conclusions are fundamental, and require no citation of authority."

Is this court, then, bound to set aside its own judgment in the matter, and the decisions of the federal courts hereinbefore referred to, and to follow these decisions of the state court? The embarrassment due to this situation is augmented by the consideration that, if the transaction involved herein were entirely local, the court would feel bound to follow the decisions of the state court in relation to such transactions. The jurisdiction of this court is limited to the state of Kentucky, and it may be stated as a general rule that it is bound by and must enforce the laws of that jurisdiction whenever cases calling for their enforcement are properly before it. It is so provided by section 721, Rev. St. U. S. But the decisions of the highest court of a state are not the laws of that jurisdiction. As said by Mr. Justice Story in the case of Swift **v.** Tyson, 16 Pet. 1, 10 L. Ed. 865:

"In the ordinary use of language, it will hardly be contended that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not of themselves laws. They are often re-examined, reversed, and qualified by the courts themselves whenever they are found to be either defective, ill founded, or otherwise incorrect."

And further, as said by Mr. Justice Bradley in the case of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359:

"The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts."

It would seem to be a corollary to these two propositions that in no case are the federal courts bound, in strictness, to follow the

decisions of the highest court of the state.    But as said further by
Mr. Justice Bradley in the case of Burgess v. Seligman:

"The existence of two co-ordinate jurisdictions in the same territory is
peculiar, and the results would be anomalous and inconvenient but for the
exercise of mutual respect and deference."

To avoid these results, and from "comity and good sense," the
federal courts show their respect for, and deference to, the set-
tled decisions of the highest court of the state, so far as to follow
them blindly, as it were, in two well-recognized classes of cases.
One class is where the matter decided relates to the interpretation
or validity of the written or statutory laws of the state, if the fed-
eral constitution is not involved.    The other class is where the mat-
ter decided relates to the acquisition, or not, of rights to; interests
in, or liens upon property located within the state, even though the
acquisition, or not, depends solely upon the unwritten law of the
state.    Often the cases which arise belong to both classes; the
acquisition, or not, of such rights, interests, or liens depending upon
the interpretation or validity of some statute.    In cases outside of
these two classes, where the matter to be decided is one of com-
mercial law, or general jurisprudence, as it is generally put, the
federal courts refuse to be bound by the decisions of the highest
state court, and exercise their own independent judgment.    Does
this case, then, come within either one of those two classes, or does
it lie on the outside?    It certainly does not come within the first
class.    There is no statute in Kentucky providing that such con-
tracts as the one involved herein are against that state's public
policy and nonenforceable within it, and those decisions of the court
of appeals as to choice of laws to govern the transactions involved
therein were not based upon any statute.    Nor does this case be-
long to the other class.    Those decisions cannot be said to have es-
tablished a "rule of property," within the meaning of that phrase
as used by the federal courts.    It is true that they hold that the
foreign associations were not entitled to a lien by virtue of their
mortgages on the real estate in Kentucky covered by them for more
than was due on the basis that the transactions were loans of
money, pure and simple.    This, however, was not because of any
invalidity in the mortgages themselves.    It was because of the na-
ture and invalidity of the personal contracts secured by the mort-
gages, as determined by them under the law of Kentucky, as to
similar transactions entirely local, which they made choice of.    If
those decisions had related to personal contracts simply,—i. e., to
contracts unsecured by mortgage,—they would not be considered
as establishing a rule of property.    The mere fact that they re-
lated to such contracts secured by mortgage on real estate in Ken-
tucky can make no difference.    Certainly not as to the personal con-
tract herein.    And if not as to it, why as to the mortgage to secure
it?    The case of Edwards v. Davenport (C. C.) 20 Fed. 756, is in
point.    By the settled decisions of the supreme court of Iowa,
the deed or mortgage of a lunatic is valid if the grantee or mort-
gagee, as the case may be, is ignorant of his lunacy when he accepts
it.    In that case suit was brought to enforce the bond and mortgage

of a lunatic. It was the court's own judgment (and it had been so ruled by the supreme court of the United States) that the bond and mortgage were invalid, though the mortgagee was ignorant of the lunacy of the mortgagor when he accepted them. The question was whether, notwithstanding this, this court was bound to follow the decision of the state court. It was held that it was not. McCrary, J., said:

"It is only necessary in the present case to determine the validity of the bonds executed by George A. Davenport. If these are held invalid as to him, the mortgage, which is a mere incident, falls with them. Can it be said that a rule respecting the validity, force, and effect of a contract entered into by a person of unsound mind is a rule of property? It is a rule which may, indirectly, in a certain class of cases, affect the title to property, but the same may be said of any ruling of the state courts respecting contracts. If the sum claimed as due upon a contract is sought to be fastened as a lien upon real estate, either by mortgage or attachment, a decision of the question of its validity will undoubtedly affect the title to such property. But it has never been claimed that for this reason the decisions of the state courts upon the validity of any class of contracts can be regarded as a rule of property. If the complainant had sued at law upon the bonds, it would not have been claimed that the state decisions in question were binding on this court. It is difficult to see upon what principle we can apply one rule to the bonds when suit is brought upon them at law, and another when suit is brought upon them in equity. The decisions of the highest court of a state may be said to constitute a rule of property when they relate to and settle some principle of local law directly applicable to titles. A rule of property is one thing; a rule respecting the validity of a class of contracts which may or may not affect titles to property is another and a different thing."

It must be held, therefore, that this case lies outside of both classes of cases where the federal courts follow the decisions of the state courts. The question involved is one of general jurisprudence. It has been intimated above that, if the transactions involved herein were entirely local to Kentucky, the court would feel bound to follow the decisions of the court of appeals in relation to such transactions. This is because such a case would become within the first class named. Those decisions were based upon a construction and determination of the validity of the legislation of Kentucky in pursuance of which the transactions involved therein were had. The conclusion we have reached finds support in the decisions by the federal courts in the building association cases cited above. In several, if not in most, of them, the decision of the federal court did not run counter to the decision of the state court, but was in accordance with them. This was so in the case of Bedford v. Association, decided by the supreme court, carried there from the circuit court, Western district, of Tennessee, through the circuit court of appeals for the Sixth circuit. The supreme court of that state had theretofore decided that in a transaction like the one in hand the foreign law should govern. These cases, therefore, are not in point in the matter now under consideration. The case of McIlwaine v. Iseley, decided by the circuit court of North Carolina, above indicated, is perhaps in point here, and so is adverse to the position taken herein. The cases, however, of Manship v. Association and McIlwaine v. Ellington are both in point, and in accord with that position. The Manship Case was de-

cided by the circuit court, Southern district, of Mississippi. It distinctly refused to follow a prior decision of the supreme court of Mississippi to the effect that in a transaction such as here the domestic law should govern. The Ellington Case was decided by the circuit court of appeals for the Fourth circuit on appeal from a decision of circuit court, Western district, of North Carolina, reported in 96 Fed. 1007, to the same effect as that in the Iseley Case. That court of appeals refused to be bound by the decisions of the supreme court of North Carolina, and reversed the decision of the lower court. This must be taken as overthrowing the Iseley Case, also, if, indeed, that was not done by direct appeal.

But in addition to this there is another reason why this court is not bound to, and should not, follow the decisions of the state court. The relation between the plaintiff and defendants, out of which this suit has grown, was entered into in August, 1892. The Harris Case (the first of the two cases from the Kentucky court of appeals referred to above) was decided by that court more than three years afterwards,—October 1, 1895. This feature brings this case within a recognized exception to the rule that the federal court should follow the settled decisions of the highest court of a state when the case comes within either of the two classes stated above. That exception is thus stated in oft-quoted language of Mr. Justice Bradley in the case of Burgess v. Seligman, supra, to wit:

"When contracts and transactions have been entered into, and rights have accrued thereon, under a particular state of the decisions, or when there has been no decision of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued."

This exception has found frequent recognition in recent years by the federal courts. The following are some of the cases: Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296; Bartholomew v. City of Austin, 29 C. C. A. 568, 85 Fed. 359; Jones v. Hotel Co., 30 C. C. A. 108, 86 Fed. 375; Speer v. Board, 32 C. C. A. 101, 88 Fed. 749; Clapp v. Otoe Co., 45 C. C. A. 579, 104 Fed. 473; Pine Co. v. Hall, 44 C. C. A. 363, 105 Fed. 84.

It is true that, before the making of the contract sought to be enforced herein, the court of appeals of Kentucky had taken its position as to transactions entirely local. This it did for the first time in a relevant case in the Johnson Case, decided in February, 1889. But it did not follow from this that the rule thus laid down would be applied to a transaction containing such foreign elements as this one does. Indeed, the settled rule in this state as to ordinary contracts for the payment of money made here and payable elsewhere had a tendency, at least, to indicate that it would not be so applied. In the case of Goddin v. Shipley, 7 B. Mon. 575, Judge Marshall said:

"The general principle that a contract referring by its own terms to a particular place where it is to be performed is to receive its construction and legal character and effect from the laws of the place thus referred to is in itself so obviously reasonable, and on the score of authority so well established, as to preclude all discussion of its correctness."

This rule has received recognition recently in the case of Glass Co. v. Taylor, 99 Ky. 24, 34 S. W. 711. Judge Pryor said:

"It is a question of intention, and all the facts must be considered in order to determine what law the parties looked to as controlling their rights under the contract,—whether the law of the place where the contract was entered into, or the law of the place where it was to be performed; nor is the rule here recognized in conflict with the cases heretofore decided by this court in Goddin v. Shipley, 7 B. Mon. 575; Hyatt v. Bank, 8 Bush, 193; Young v. Harris, 14 B. Mon. 556, 61 Am. Dec. 170. Ordinarily the place of performance fixes the nature and interpretation to be given the contract."

And in the case of Brown v. Todd's Adm'r, 29 S. W. 621, the court upheld a judgment enforcing a mortgage on real estate in Kentucky to secure a note given and payable in Indiana, which stipulated for 8 per cent. interest and attorney's fee, though, according to the settled law of this state, that stipulation was usurious and illegal. Judge Guffy said:

"The law of the place where the contract was made and where it was to be performed must govern in this case, and the proof in the cause establishes the fact that such a contract, as to interest and attorney's fee, was enforceable under the laws of the state of Indiana."

It follows from these considerations that this court is not bound to follow the state decisions, and is at liberty to make choice of that law which it deems is the proper law of this case. That law, as we have already shown, is the law of Minnesota, and the transaction between plaintiff and defendant must therefore be upheld as made. This conflict between the state and federal court in this jurisdiction is unfortunate. We can only say, as was said by Mr. Justice Swayne in the case of Butz v. Muscatine, 8 Wall. 575, 19 L. Ed. 490, where a similar condition existed:

"There are several adjudications of the highest court of the state more or less adverse to the views we have expressed. Entertaining the highest respect for those by whom they were made, we have yet been unable to concur in the conclusion which they announce. It is alike the duty of that court and of this to decide the questions involved in this class of cases, as in all others, when presented for decision. This duty carries with it investigation, reflection, and the exercise of judgment. It cannot be performed on our part by blindly following the footsteps of others, and substituting their judgment for our own. Were we to accept such a solution, we should abdicate the performance of a solemn duty, betray a sacred trust committed to our charge, and defeat the wise and provident policy of the constitution which called this court into existence."

The books of the defendants show the payments made by them on account of interest and stock installments to have been $1,836. It is admitted that $63 were paid on account of fines. This makes a total of $1,899.00, the amount claimed by defendants. This must therefore be adjudged to be the correct amount. Counsel for plaintiff will restate accounts on this basis, and draw decree for balance due as thus ascertained, with 6 per cent. interest thereon from December 8, 1896, until paid.