### CURTICE v. CRAWFORD COUNTY BANK et al.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. September 3, 1903.)

No. 110.

1. CLERK OF CIRCUIT COURT—COMMISSIONS—PROCEEDS OF PROPERTY SOLD.

Rev. St. § 995 [U. S. Comp. St. 1901, p. 711], requires "moneys" only which are paid into court or received by the officers thereof to be deposited with a depositary so as to entitle the clerk to commissions thereon under section 828 [U. S. Comp. St. 1901, p. 635], and does not affect the power of the court to permit payment for property to be made in other forms as may be most appropriate or convenient to the parties; and where a bidder is permitted to make a deposit with the master in the form of a check or certificate of deposit, and to pay for the property by crediting the amount on the decree in his favor, neither the deposit nor the purchase money is required to be deposited in court.

In Equity. On motion by clerk to require master to deposit proceeds of sale.

See 110 Fed. 830.

Thomas Boles, pro se.

James F. Read and J. B. McDonough, for Crawford Co. Bank and others.

¶ 1. See Clerks of Courts, vol. 10, Cent. Dig. § 77.

ROGERS, District Judge. This is a motion made by Thomas Boles, clerk of this court, for an order requiring the special master appointed to make the sale to deposit in this court the proceeds of the sales made by him. The facts are as follows: There was a decree of this court rendered in this cause at the June term, 1901, to wit, on the 20th of September, 1901. By the terms of the decree it was provided that:

"In making said sale said special master shall offer and sell separately said note, judgment, and each of said certificates of stock. Upon the acceptance of any bid for such property, or any part thereof, the purchaser or purchasers shall forthwith deposit with the said special master a sum equal to ten per cent. of the amount of said bid in money or in check, satisfactory to the said master; and, in the event the successful bidder shall fail to make good his bid upon its acceptance by the said master, the master shall immediately proceed to resell said property without further order of said court or notice, or advertisement whatsoever."

It is further provided that:

"The master shall make return to the court of the sale made by him under this decree; and if the court shall confirm said sale the purchaser or purchasers shall have thirty days within which to pay or settle for the balance due by him or them upon said purchase; and, in default thereof, the court may order a resale of said property, and said purchaser or purchasers shall be liable for all the expenses thereof, and for any deficiency of price realized thereon; and the money or check deposited by him or them on the acceptance of his or their bid shall be applied thereto. It is further ordered, adjudged, and decreed that the fund arising from the sale of said property shall be applied in the following order of priority, to wit: (1) To the payment of the costs in this cause, arising under the cross-complaint herein, and the expenses of said sale, including reasonable compensation to said master. (2) To the payment of the judgment rendered in favor of said Crawford County Bank against said E. B. Peirce, administrator, as aforesaid. (3) If, after making all the above payments, there be a surplus, then the same shall be paid into court, subject to the further order of the court herein."

The case was reserved for the purpose of making such distribution of such surplus fund. The case was taken to the Court of Appeals of the Eighth Circuit, and the decree was modified by that court as follows:

"On consideration whereof it is now here ordered, adjudged, and decreed by this court that the decree of the said Circuit Court in this cause be, and the same is hereby, modified so as to provide that the proceeds of the sale of stock certificate No. 108, after deducting its pro rata of the costs of the action in the Circuit Court, be applied, first to the payment of the indebtedness due from the estate of Robert L. Hynes, deceased, to the appellant, J. M. Curtice, and that any sum which may remain after such indebtedness and accrued interest if discharged, be applied on the claim of the Crawford County Bank, and as thus modified, that the decree of the said Circuit Court be, and the same is hereby, affirmed."

On the filing of the mandate from which the last excerpt was taken at the January term, to wit, on the 2d of February, 1903, a decree was entered in this court, modifying its original decree in conformity to the provisions of the mandate of the Circuit Court of Appeals. It will be seen that the effect of this decree was to require (1) that all the costs be paid, including a reasonable compensation to the master; (2) that the proceeds of certificate No. 108, which had been awarded by this court to the Crawford County Bank, was directed to be ap-

plied, first, to the payment of the plaintiff, J. M. Curtice, and the residue thereof to be applied to the debt of the Crawford County Bank, thereby nullifying that provision of the original decree, which required the surplus to be paid into court. Afterwards, on the 16th of March, 1903, by an assignment duly entered of record, the plaintiff, Curtice, sold and transferred his entire interest in said decree to the Crawford County Bank. On the same day that said assignment was made the special master made sale of all the property described in the decree, and on the 26th of March, thereafter, filed his report, which was duly approved on April 11, 1903. At said sale the Crawford County Bank bought all the property. In the order approving the sale it also appears that the Crawford County Bank had become the purchaser of all the interest in the decree which J. M. Curtice had and recovered, and that the debt of the said J. M. Curtice, and that of the Crawford County Bank were largely in excess of the sum realized from the sale of all the property. Said order confirming and approving the sale vested in the Crawford County Bank all the property sold, except the sum of $17.50, allowed the master. On the day said sale was approved the clerk filed his motion hereinabove referred to to require the special master to pay into court the proceeds of the sale of all the property, amounting in the aggregate to $17,410.

As said by Mr. Justice Brown in Thomas v. Chicago & C. S. Ry. Co. (C. C.) 37 Fed. 548:

"While this is nominally an effort to compel the performance of a duty enjoined by statute, viz., the deposit of money with a designated depositary, it is in reality a proceeding to collect the commission of the clerk upon the moneys so deposited. By Rev. St. U. S. § 995 [U. S. Comp. St. 1901, p. 711], 'all moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to credit of such court: provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of the parties under the direction of the court.' By section 996 [U. S. Comp. St. 1901, p. 711] moneys so deposited shall only be withdrawn upon the order of a judge entered and certified of record by the clerk. By section 828 [U. S. Comp. St. 1901, p. 635], the clerk is allowed 'for receiving, keeping and paying out money in pursuance of any statute or order of court one per cent. on the amount so received, kept and paid'; and by section 798 [U. S. Comp. St. 1901, p. 621] he is required to present at each regular session of the court an account of all moneys remaining therein or subject to its order, stating in detail in what causes they were deposited, and in what causes payments have been made."

By the report of the master it is made to appear that the Crawford County Bank, immediately after the sale, deposited with the special master "a sum equal to ten per centum of its purchase price, to wit, the sum of $1,741." By an affidavit of the special master, filed since the motion was made, it appears that the 10 per cent. of the amount paid at such sale was not paid in actual cash, but consisted of a certificate of deposit issued to him by the purchaser, the Crawford County Bank, through its cashier, S. A. Pernot. It appears, therefore, that no money or cash ever passed into the hands of the master. By the terms of the original decree it was a matter of discretion with the master to require the money to be paid or receive a check satisfactory to himself. It will be remembered that by the terms of the

decree of the court of appeals (which this court would have to follow) no money was required to be paid into court at all. It will be seen by an examination of the language of the statute that nothing but moneys paid into courts of the United States, or received by the officers thereof, are required to be deposited with the treasurer, or assistant treasurer, or designated depositary of the United States in the name and to the credit of the court; and in the case last referred to Brown, J. (now associate justice of the Supreme Court of the United States), distinctly held that the statute referred to applied only to moneys, and not to properties of other kinds which came into the hands of the master. In that case he said:

"The decree in this case seemed to contemplate a purchase and reorganization of the road by the bondholders, and it accordingly provided, as is proper and customary in railway foreclosures, that the bonds and coupons which represented the mortgage debt in process of foreclosure might be used in payment of the purchase price by any bidder at the sale, for their proportionate value, according to the amount so bid. It was obviously framed upon the theory that the road would not sell for enough to pay the principal or the face of the bonds. No provision was made for such bondholders as did not choose to participate in the reorganization of the road, but by the supplemental decree the master was directed to give public notice to the holder of such bonds to present them to him .for payment, in cash, of the pro rata amount to which each bond and coupon was entitled from the purchase money paid on sale. It is now urged that by this arrangement the bondholders who participated in the reorganization received by indorsement upon their bonds the full proportionate amount of their bonds, while the nonparticipating bondholders,. who were paid in cash, received a like amount, but with a deduction of the commission of 1 per cent. to the clerk. This is entirely true, but it is a distinction which arises from the language of the statute itself. The statute requires only that 'moneys' shall be deposited with the designated depositary, and makes no such provision with regard to bonds or other personal property that may be accepted in lieu of money upon the sale. If, for instance, the plaintiff in an execution should direct the marshal to receive in payment of the property sold a railway or municipal bond at its face value, such bond would not require to be deposited, nor would the clerk be entitled to a commission upon it; but, if money is required to be collected in payment, such money, by the express language of the statute, must be deposited. There is undoubtedly some inequality here, but it is one which results solely from the language of the statute."

In this case no money ever came to the master. The certificate of deposit which was placed in his hands was the property of the bank, subject to certain contingencies expressed in the original decree (which in this case never happened), and immediately upon the approval of the sale the certificate became the property of the bank without reservation, because the bank owned the Curtice judgment and its own judgment, but was, of course, bound for all costs rightly taxable in the cause. Easton v. Houston & T. C. Ry. Co. (C. C.) 44 Fed. 719, was a case in which the sale was ordered, and the money directed to be paid into court. Afterwards, by consent and on motion, the decree was modified, and the commissioner was directed to receive, in lieu of money, bank checks or bank certificates of deposit. The clerk sought by intervention to modify the decree so as to have the money brought into court, and thereby receive his commission. Judge Pardee said:

"The court had the right to modify the decree. The original decree provided for modifications upon proper application, and the complainants petitioned for the one in question, and the defendants consented thereto. The

modification seems to have been a proper one under the circumstances of the case. The money affected by it was earnest or forfeit money. In a contingency it was to be restored in its entirety to the purchaser, and was undoubtedly his money until the sale should be confirmed. If it had been deposited in the registry of the court, as provided in the original decree, and the sale had been set aside, it could not have been restored in its entirety to its owner, because in that case the clerk's fee would have attached, and properly so; for then he would have had the responsibility of receiving, keeping, and paying out the money."

That was the case here. No money was received by the special master. He was not required to receive money unless, in his judgment, it became necessary. He had the liberty to accept checks, which he did accept, and, having accepted the checks, he was not required to pay them into the depositary of the court, even if the decree had provided for it. But, as stated, the decree did not so provide, and, it being the decree of the Circuit Court of Appeals, this court had no power to alter or modify it, and no power to disobey or disregard it. The merits of this controversy, in the opinion of the court, are entirely with the bank. There are a number of cases which incidentally bear upon the subject; among others, Johnson et al. v. Southern Building & Loan Association (C. C.) 95 Fed. 922, affirmed in Bowles v. Bowman, 102 Fed. 1000, 41 C. C. A. 675; U. S. v. Kurtz, 17 Sup. Ct. 15, 41 L. Ed. 346.

The motion in this case is denied.