PRENTISS (ROSS v.). See Case No. 12,078.

PRENTISS (ST. JOHN v.). See Case No. 2,194.

PRESBYTERIAN CHURCH, BOARD OF FOREIGN MISSIONS OF THE, v. McMASTER. See Case No. 1,586.

## Case No. 11,388.

Ex parte PRESCOTT.

[2 Gall. 146.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1814.

CLERK OF COURT—COMMISSIONS—MONEY DEPOSITED IN BANK.

Money deposited in a bank under a decree of the court, and subject to its order, is "money deposited in court" within the meaning of the act

---

[1] [Reported by John Gallison, Esq.]

of 1793. c. 20, § 2 [1 Stat. 332]. And the clerk is entitled to commissions upon such money in the same manner, as if it had actually been paid into his hands.

[Cited in Leech v. Kay, 4 Fed. 73; Thomas v. Chicago & C. S. Ry. Co., 37 Fed. 549; Easton v. Houston & T. C. Ry. Co., 44 Fed. 720.]

At this term a petition was filed by G. W. Prescott, Esq., the clerk of the district court of the district of New Hampshire, in behalf of himself and of the late clerk of said court, praying that a monition might issue to Messrs. Prince and Deland, prize agents of the private armed ship America, to bring into court, out of the prize proceeds of the ship St. Lawrence and cargo, the amount of the commissions, due to said clerk, of one and one quarter per cent. upon said proceeds, the same having been paid over to said agents upon a decree of final condemnation executed by this court in pursuance of the mandate from the supreme court. The agents, having appeared to the monition, which issued on this application, asserted in their defence, that under all the facts and circumstances of the case, no commissions were due, either to the present or former clerk, out of said proceeds; and that the sum of $2,317.15, and no more, now remained in their hands undistributed, which sum had been reserved to await the supposed claim in this case, under a notice that half per cent. commissions, and no more, would be insisted on. [Case No. 12,333.]

The facts alluded to are as follows: At the October term of this court in 1813, the ship St. Lawrence and cargo were condemned as good prize to the captors,—The St. Lawrence [Case No. 12,232],—and from the decree of condemnation the claimants appealed to the supreme court,—[8 Cranch (12 U. S.) 434]. At the same term, the captors moved the court to order the ship and cargo to be sold, and the proceeds to be deposited in the registry of the court, or delivered to the captors on bail. Upon this motion, after hearing the parties, the court by consent passed the following order: "Ordered, that the cargo of the ship St. Lawrence be unlivered by and under the direction of the marshal of this district, and after unlivery be sold by the marshal aforesaid at public auction at Portsmouth, the sale to be notified in some one or more public newspapers printed in Portsmouth, in Salem, in Boston, and in New York, at least twenty days before the sale, and the said cargo to be sold for cash only; and that the proceeds of the said cargo. after sale, be deposited one half in the New Hampshire Bank and one half in the New Hampshire Union Bank; in Portsmouth, subject to the order of this court in term, and in vacation to the order of the associate justice of the supreme court of the United States, assigned to the First circuit; and that a warrant issue to the marshal to execute this order." A warrant issued to the marshal in conformity with this order, and the cargo

and the ship also, by consent of the parties, were sold, and the proceeds deposited by the marshal, in the name of the court, in the banks at Portsmouth, according to the order, and so remained deposited until the last May term of this court, when the decree of condemnation having been affirmed as to all the claims, but one, by the supreme court, in pursuance of a mandate of the same court, the proceeds were delivered over to the prize agents, and parties entitled thereto. It is unnecessary to state the facts, as to the relative rights of the present and former clerk, as it was conceded by the parties, that if either was entitled, the whole commissions might be paid to the present clerk.

Mr. Humphreys, Dist. Atty., and E. Cutts, for the clerk.

This is to be considered as an abstract question, without any regard to the quantum of money paid. The law, which regulates the clerk's fees, provides that "on all money deposited in court," or which is the same thing, "paid into court," he shall have one and a quarter per cent. It is said, that this commission is allowed him for his care and trouble in receiving, keeping and paying over money, which is actually paid into his hands, and therefore ought not to be given in the present instance, because he has had no trouble respecting it. What then is meant by paying money into court? Certainly not that it should be told and laid on the table, in sight of the court, or delivered from their servant the marshal to their servant the clerk. It is sufficient if it be placed completely in their power and control. If the marshal, for greater security, should pay it into a bank, and deliver to the court his check, the money would to all intents be paid into court, though never seen by them. This is confirmed by a subsequent order of the court, which, after directing payment of a portion of this money, speaks in express terms of "the balance of the money remaining in court." The order in the present case differs from that usually passed. only in directing payment into the bank. The control of the court is still the same. Ought the owners to misinterpret an unimportant deviation from the common form, as depriving an officer of the court of a commission, which he had a clear right to claim? The law respecting the clerk's emoluments is unambiguous. Those interested may, some of them at least, wish to make their great prize still greater by a diminution of these emoluments. They may persuade themselves, that though the law does not give them too much, when it enriches them by this capture, yet it gives the clerk too much. But it is not for them or us to judge of the reasonableness of the law. We are both confined to its meaning.

The duties of a clerk are arduous and responsible. In order to support the respectability of the office, and to compensate for

other low fees, congress added the commission as a perquisite, not as a quantum meruit for a particular service. The court, by its solemn acts and decrees, disposing of and distributing this money, has determined, that the money was deposited in court. And the owners and captors have as solemnly agreed in this determination. They confirmed it by their receipt now in court, by which they acknowledge, that they had received the specified sum "from the circuit court." Thus there has been no departure from the legal course, nor any material departure from the usual course. Nor indeed could there have been. For what would be the consequence? No less than this; if by an order to deposit the money in a bank, the clerk's commission was taken away, it would follow that the court could change the law respecting his commission, and take it away, by making such an order, in every case. But it is impossible to admit a construction, that might take away all his commission in every case, when both the first and last act give him a commission, and it seems admitted, that he would be entitled now to his half per cent. if the court, as in our case, should order the money, in the first instance, to be paid not to the court itself, but to a bank, subject to the court's order. It may be added, finally, that our construction is confirmed by the consideration, that it is the only one consonant with the distinguishing principle, that marks such admiralty or civil law proceedings, namely, that the court itself is the medium of transfer or distribution, whenever property decreed forfeited is ordered to be distributed.

Mr. Pitman, for the prize agents, argued to the contrary. But, as the reporter was not present, he is unable to state the argument. The opinion of the court was delivered at a subsequent day.

STORY, Circuit Justice. The act of the 1st of March, 1793, c. 20, § 2, revived by the act of 28th of February, 1799, c. 125, § 3 [1 Story's Laws, 570; 1 Stat. 625, c. 19], provides that in all cases of admiralty jurisdiction, the clerk of the district court shall, among other fees, be entitled to one and one quarter per cent. on "all money deposited in court." The single question presented for decision is, whether the proceeds of the St. Lawrence and cargo were, within the meaning of this clause, "deposited in court." If so, then the clerk is entitled to his commission; if otherwise, then his application must be dismissed.

It is argued by the counsel for the prize agents, that the money in this case never was deposited in court, because it never was brought into court, nor actually or constructively in the hands or possession of the clerk; that the commissions in the statute were intended as a remuneration to the clerk for the custody of the money, and for labor and care in its receipt and payment; and therefore, that the present case falls neither within the letter nor spirit of the provision. It is highly probable, when we consider the few banks existing at the passage of the statute, that the legislature contemplated the case of an actual custody by the clerk of money deposited in court. But it by no means follows, even admitting this argument to be correct, that this was the sole or governing motive for the fees allowed him. Other important considerations might well have weighed with a wise legislature, not only to provide a sufficient salary for its ministerial officers, but also a recompense for collateral services, pro opere et labore, in business incident to the disposal of the money of the court. Independent of the custody of money, the interlocutory orders, touching its receipt, deposit and distribution, may, and in fact do, in admiralty proceedings, often involve considerable detail and responsibility. The very case before the court is a proof of it; and if the captors, instead of a payment to the general agents, or to a few private agents, had required a distribution of their individual shares separately and singly from the court, as they well might, the compensation now sought would not have been so extravagant a reward, as it is now urged to be. Be these considerations as they may; it is not by conjecture, but upon legislative intentions apparent in the statute, that the words are to be construed. Where the language of an act is plain and clear, cases are not to be excepted from the generality of the expressions, unless such exceptions are fairly implied, or necessarily drawn from the purview. The statute does not speak of money coming into the hands or possession of the clerk, and to engraft such a qualification upon the language would be legislation, and not judicial construction. "Money deposited in court" cannot mean money brought in and deposited sedente curia, in the actual manual possession of the court. Such a construction would be against all practice, as well as all legal reasoning. It must therefore mean money, which is deposited subject to the order of the court, be it in whose actual possession it may, whether of a bank or of an officer of the court. In such a case, the bank or officer acts as the mere fiduciary, or depositary, of the court, and in legal contemplation the money is in the custody of the court. It would be a contempt of the court for any other person to intermeddle therewith. It is a mere substitute for the original property seized under the process of the court, and as much under its sole and exclusive direction, as the property itself. It is emphatically (what all property seized under admiralty process is) in the custody of the law. In this respect, it differs widely from the case of property delivered regularly and bona fide on bail. The latter is no longer subject to the control or custody of the court; and the parties to the stipulation are not the depositaries, but the debtors of the court.

On the whole, I am of opinion, that the

money in the present case was, in legal intendment, deposited in court; and, consequently, the clerk was and is entitled to the fees prescribed by law. This construction is, in my judgment, fully supported by the more recent acts applicable to this subject. I mean the Acts of 18th of April, 1814, c. 121 [2 Story's Laws, 1417; 3 Stat. 133, c. 79], and chapter 138 [2 Story's Laws, 1423; 3 Stat. 127, c. 62]. It is conceded, however, by the parties, that no more than one half per cent. can now be claimed from the prize agents, and with that the clerk is content. I shall therefore decree the money admitted to be in the hands of the prize agents to be brought into court, and paid over to the clerk.