GOODRICH (BAILEY v.). See Case No. 735.

GOODRICH (BARNUM v.). See Case No. 1,036.

## Case No. 5,542.

### GOODRICH v. CHICAGO.

[4 Biss. 18.] [1]

Circuit Court, N. D. Illinois. July Term, 1864.[2]

LIABILITY OF CITY FOR OBSTRUCTIONS IN RIVER.

1. In the construction of the charter of a city the federal courts are bound by the decision of the supreme court of the state.

2. If a city undertakes to remove obstructions from a river, which it is under no legal obligation to remove, and abandons the work without having changed the status of the obstruction, it does not become liable for subsequent damages caused by such obstruction. The city by assuming such a work does not assume any new liability.

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
2 [Affirmed in 5 Wall. (72 U. S.) 566.]

[Appeal from the district court of the United States for the Northern district of Illinois.]

In admiralty. This was a libel filed by Albert E. Goodrich to recover damages sustained by reason of an obstruction in the Chicago river. The libellant alleges that he is the owner of a line of propellers regularly navigating the Lakes, and that one of them, leaving the port of Chicago, ran against a sunken rock in the river and was seriously injured. The ground-work of the proceeding was that the city of Chicago, by its charter, had been vested with exclusive jurisdiction and control over the river, and that the duty was imposed on it to remove obstructions, and that this duty was binding on it. It is provided in the city charter of Chicago that the city may remove and prevent all obstructions in the waters which are public highways in said city, and widen, straighten, and deepen the same; may preserve the harbor, prevent any use of the same, or any act in relation thereto, inconsistent with or detrimental to the public health, or calculated to render the waters of the same, or any part thereof, impure or offensive, or tending in any degree to fill up or obstruct the same; prevent and punish the casting or depositing therein any earth, ashes, or other substance, filth, logs, or floating matter; prevent and remove all obstructions therein, and punish the authors thereof; and shall have power to regulate and prescribe the mode and speed of entering and leaving the harbor, and of coming to and departing from the wharves and streets of the city, by steamboats, canal-boats, and other craft and vessels, and the disposition of the sails, yards, anchors, and appurtenances thereof, while entering, leaving, or abiding in the harbor; and to regulate and prescribe, by such ordinances, or through their harbormaster or other authorized officer, such a location of every canal-boat, steamboat, or other craft or vessel, or float, and such changes of station in and use of the harbor as may be necessary to promote order therein, and the safety and equal convenience, as near as may be, of all such boats, vessels, crafts, and floats; and may impose penalties not exceeding one hundred dollars for any offense against any such ordinance; and by such ordinance charge such penalties, together with such expenses as may be incurred by the city in enforcing this section, upon the steamboat, canal-boat, or other vessel, craft, or float. The harbor of the city shall include the piers and so much of Lake Michigan as lies within the distance of one mile into the lake, and the Chicago river and its branches to their respective sources.—Laws and Ordinances of Chicago, 1873, pp. 403, 407. Further facts are stated in the opinion.

Goodwin, Larned & Goodwin, for libellant.
Robert Rae and B. F. Ayer, for the city.

DAVIS, Circuit Justice. The question depends upon the proper construction to be

given to the provision in the charter of the city of Chicago. The defendant contends that the language is that of permission and not of command, while libellant insists that it must be considered as creating an imperative duty. If this question was an open one I should have no hesitation in holding that the legal obligation does so rest, and that the city is bound to make full redress to a party who is injured by neglect of that duty. 1 think that the true interests of commerce and the best interests of the city would be promoted by such a construction, and that it is sanctioned by principle and authority.

But the supreme court of the United States has always held that the federal judiciary will adopt the adjudications of the judicial department of the several states as the appropriate organ for construing the legislative enactments of that government. Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152.

Goodrich sued at law in one of the courts of the state for the same matter for which this libel is brought. The declaration sets forth the cause of action fully; it asserted the legal obligation of the city and its liabilities because the city had wrongfully let the obstruction remain to the danger of navigation. All the provisions of the charter, which could be supposed to confer authority on the city, were cited, and it was averred that the city had assumed the liability, and for that purpose had levied taxes, had controlled the waters, and had passed ordinances relating to them. In one of the counts of the declaration the ordinance of the common council was set forth. In short, every averment was made that was necessary to raise the question. A demurrer was interposed to this declaration which was sustained, and the case was taken to the supreme court for adjudication. The case is reported in 20 Illinois, 445, and the judgment of the court below was affirmed. The supreme court say, "To maintain this action we must hold, that the city is bound to exercise all the authority here conferred and to do all the acts here authorized. Such, we are satisfied, was not the intention of the legislature."

This is an authoritative adjudication denying the exclusive obligation and duty on the part of the city. In order to escape the effect of this decision, the libellant avers that the city undertook to remove the rock, and left it in a more dangerous position than at first. This averment was doubtless made because the supreme court said if the authorities of the city undertook to remove this rock, and in so doing had carelessly left it in an exposed position, by reason whereof the plaintiff's steamer had run against it, and was injured, the city would be liable. There can be no clearer principle of law than this: that a municipal corporation, when it undertakes to do an act, must do it carefully, and if not an action will lie. I think the proof, however, fails to establish the fact that what was done by the city tended to the injury of the

harbor. The harbor-master did attempt to get the rock out, but abandoned the enterprise. He swears the rock was so imbedded in sand that he did not succeed in loosening it. The master of the tug corroborates the testimony of the harbor-master, and swears that the sunken stone or rock did not change position at all. But it is said the city assumed to remove it. In what way? By passing an ordinance requiring the harbormaster to give notice to masters of vessels to remove. It may be said that this ordinance imposed no legal obligation as is averred in the libel. But it is said also that the city assumed the responsibility when the harbormaster tried and failed. I cannot see how that fact of itself could impose a legal obligation. The attempt was made to remove the obstruction and abandoned. It injured no one. The act was not wrongful and was not the cause of the accident. It was proper enough to try to remove the obstruction, but it was not imposed on the city as an imperative duty, and on no legal principle can the libel be maintained. The city has done nothing in this case to injure the harbor, and if the supreme court decision is binding on me there is an end to this litigation.

I have not discussed the question of res adjudicata. The judgment, although on demurrer, is a judgment on the merits, and it decides that the action will not lie. The libel is dismissed.

[NOTE. Upon an appeal by the libelant to the supreme court, the decree of the circuit court was affirmed in a brief opinion by Mr. Justice Swayne (5 Wall. [72 U. S.] 566) upon the ground that there was no such difference between the above case and that decided in the supreme court of Illinois as could take the case before it out of the operation of the principles of res adjudicata.]