## THOMAS v. CHICAGO & C. S. RY. CO.

*(Circuit Court, E. D. Michigan. February 5, 1889.)*

MORTGAGE — FORECLOSURE — SALE — DEPOSITARIES—DEPOSIT OF PROCEEDS BY MASTER.

Money received by a master in chancery in payment of property sold upon the foreclosure of a mortgage ought, in pursuance of Rev. St. U. S. § 995, to be deposited with a designated depositary of the United States, and the clerk is entitled to his commission thereon.

*(Syllabus by the Court.)*

On petition of Walter S. Harsha, clerk of the circuit court, for an order to pay money into court.

This was a bill of foreclosure, upon which a decree for the sale of the property had been passed and executed. The decree, which was entered at the March term, 1888, directed that "out of the money which shall come into his hands as the proceeds of said sale the said master shall pay the expenses of said sale, and complainant's costs in this suit, as the same shall be taxed, and such allowances, if any, as may be made by this court; and the residue of such money, if any remains after final settlement with the purchaser, he shall deposit in the First National Bank of Detroit to the credit of this court and cause, to abide the further order of this court." The sale of the road was made by the master, who reported a cash receipt of $54,255.10 over and above the costs and expenses of sale. Upon the filing of this report, an order was entered by consent of parties, that the master give public notice to the bondholders to present their bonds for payment; that he pay to each one the amount to which he is entitled; and "that, pending the distribution of the money, he deposit the balance of money in his hands to the credit of said cause, in the Detroit Savings Bank, the same to be paid upon his checks, countersigned by the solicitor for the complainant." This order the clerk moved to vacate as having been improvidently made in violation of Rev. St. U. S. § 995, requiring all moneys paid to officers of the United States to be deposited with the designated depositary of the United States, in the name and to the credit of the court.

*John H. Bissell,* for complainant.

*Walter S. Harsha, in pro. per.*

BROWN, J. While this is nominally an effort to compel the performance of a duty enjoined by statute, viz., the deposit of money with a designated depositary, it is in reality a proceeding to collect the commission of the clerk upon the moneys so deposited. By Rev. St. U. S. § 995, "all moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to credit of such court: provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of

the parties under the direction of the court." By section 996 moneys so deposited shall only be withdrawn upon the order of a judge entered and certified of record by the clerk. By section 828 the clerk is allowed "for receiving, keeping, and paying out money in pursuance of any statute or order of court one per cent. on the amount so received, kept, and paid;" and by section 798 he is required to present at each regular session of the court an account of all moneys remaining therein or subject to its order, stating in detail in what cases they were deposited, and in what cases payments have been made.

There can be no doubt that a master in chancery is an officer of the United States, (*U. S.* v. *Hartwell*, 6 Wall. 385,) and, *prima facie* at least, bound to deposit moneys in his hands in compliance with the law. The real question is whether the selection of another bank in this case is justified by the proviso of the statute permitting the delivery of money upon security, according to the agreement of the parties, under the direction of the court. I may say in this connection that I regard the right of a clerk to his commission simply as an incident to money in his hands or under his control, and not by any means as a reason for depositing money with him which may lawfully be deposited elsewhere; and hence, if it were clear that the proposed disposition of the money in this case was a delivery upon security within the meaning of the proviso, I should have no doubt that this might be done without the formality of a previous deposit in court. I apprehend, however, that this proviso has reference to the well-known usage of the court of chancery to invest funds in its hands in bonds or other securities, pending a litigation or an appeal, and not to a temporary deposit of money to be immediately paid out to persons showing themselves entitled thereto. A delivery upon security presupposes an investment for a certain length of time on other security than the personal responsibility of the bailee. If the parties may agree in this case that this money may be deposited with some other than the depositary designated by law, it may be done in every case in which money is paid to the marshal or other executive officer of the court, and the provisions of section 828 allowing the clerk a commission rendered practically nugatory. The fact that an investment may be made upon security by agreement between the parties would seem to preclude the idea that, if no such investment were made, the parties could agree upon another depositary than that designated by law. While I should reprehend any attempt of the clerk to collect fees to which he is not legally entitled, I think the court is bound to aid its officers, as well as its litigants, in the assertion of their lawful rights. But, even if this money were not delivered to a designated depositary, but was allowed to remain in the bank selected by the parties, there is reason for saying that it would still be subject to the order of the court, and the clerk would be entitled to his commission. In the case of *Ex parte Prescott*, 2 Gall. 146, Mr. Justice STORY entertained a petition filed by the clerk of the district court, for the payment into court of his commission upon certain prize proceeds of a ship and cargo, which had been sold, and the proceeds deposited in certain banks, subject to the order of the

court. The court held that the money had been "deposited in court" within the meaning of the law, and that the clerk was entitled to his commission upon such money in the same manner as if it had actually been paid into his hands. The cases in which the clerk has been held not entitled to his commission are those in which the money was never paid to an officer of the court. Thus, in *Ex parte Plitt*, 2 Wall. Jr. 453, the money remained in the hands of an administrator, who was not an officer of the court. In *Re Goodrich*, 4 Dill. 230, writs of *mandamus* had been issued against the city of Little Rock, commanding the city to levy a tax to pay certain judgments, and an order made that when the tax so levied should be collected it should be paid into the registry of the court for the purpose of satisfying the judgments. Instead of so doing, the city officers paid to the attorneys for the plaintiffs, directly, the amounts of the judgments, and it was held that as the money had never been in the hands of the court, the clerk was not entitled to his commission. So in *Leech* v. *Kay*, 4 Fed. Rep. 72, it was held that the clerk was not entitled to a commission upon money in the hands of an assignee in bankruptcy, because the bankrupt law provided that the assignee should deposit the money in his own name, and did not contemplate that it should be paid into the registry.

The decree in this case seemed to contemplate a purchase and reorganization of the road by the bondholders, and it accordingly provided, as is proper and customary in railway foreclosures, that the bonds and coupons which represented the mortgage debt in process of foreclosure might be used in payment of the purchase price by any bidder at the sale, for their proportionate value, according to the amount so bid. It was obviously framed upon the theory that the road would not sell for enough to pay the principal or the face of the bonds. No provision was made for such bondholders as did not choose to participate in the reorganization of the road; but by the supplemental decree the master was directed to give public notice to the holders of such bonds, to present them to him for payment, in cash, of the *pro rata* amount to which each bond and coupon was entitled from the purchase money paid on sale. It is now urged that by this arrangement the bondholders who participated in the reorganization received by indorsement upon their bonds the full proportionate amount of their bonds, while the non-participating bondholders, who were paid in cash, received a like amount, but with a deduction of the commission of 1 per cent. to the clerk. This is entirely true, but it is a distinction which arises from the language of the statute itself. The statute requires only that "moneys" shall be deposited with the designated depositary, and makes no such provision with regard to bonds or other personal property that may be accepted in lieu of money upon the sale. If, for instance, the plaintiff in an execution should direct the marshal to receive in payment of the property sold a railway or municipal bond at its face value, such bond would not require to be deposited, nor would the clerk be entitled to a commission upon it; but, if money is required to be collected in payment, such money, by the express language of the statute, must be deposited. There is undoubtedly some

inequality here, but it is one which results solely from the language of the statute.

An order will be entered vacating the order heretofore made in so far as it provides for a different deposit of the money than the one originally designated by the decree of March 28, 1888.