MICHIGAN CENT. R. CO. v. HARSHA, Clerk.

(Circuit Court of Appeals, Sixth Circuit. December 1, 1904.)

No. 1,313.

1. CLERKS OF CIRCUIT COURTS—COMMISSION.

A clerk of a Circuit Court is not entitled under Rev. St. § 828 [U. S. Comp. St. 1901, p. 635], to a commission on the proceeds of mortgaged property sold under a foreclosure decree, which by order of the court is paid by the master making the sale directly to the mortgagee.

2. SAME.

To entitle a clerk of a Circuit Court to a commission for "receiving, keeping, and paying out money," under Rev. St. § 828 [U. S. Comp. St. 1901, p. 635], such money must be paid to him or be subject to his order, so that he becomes responsible for its keeping and payment. A fund paid by a master into a United States depository, pursuant to an order of the court, and subject to be withdrawn on its order, is neither actually nor constructively in the keeping of the clerk, and he is not entitled to a commission thereon when it is so paid out.

3. SAME.

Railroad bonds deposited in a Circuit Court as collateral security by its order, and kept in a bank vault to which the clerk kept the key, are not "money," and the clerk is not entitled to a commission thereon, under Rev. St. § 828 [U. S. Comp. St. 1901, p. 635], when by order of the court he takes them from the bank and surrenders them to the depositor; nor is there any authority outside of the statute for the allowance of such a commission.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Geo. E. Tegart (Henry Russel, of counsel), for appellant.

Henry M. Duffield, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from an order of the court below requiring the appellant to pay to W. D. Harsha, as clerk of the Circuit Court, $2,660 for receiving, keeping, and paying out $266,-000, within the meaning and intent of section 828, Rev. St. [U. S. Comp. St. 1901, p. 635]. This order was made upon a petition filed by the clerk praying that the Michigan Central Railroad Company be required to show cause why it should not be required to pay certain costs claimed by him, consisting of three items, to wit:

| | |
|---|---|
| "One per cent on $266,000.00 .................................... | $2,660 00 |
| For special services in examining, identifying, checking, canceling, and assigning bonds ............................................. | 50 00 |
| For service as clerk filing papers and entering orders ............ | 85 |
| | $2,710 85 |

The railroad company appeared in pursuance of the order to show cause, and did not contest the item of $50, nor that of 85 cents, but filed a demurrer to the claim for a commission of 1 per cent. upon $266,000. The demurrer was overruled, and, the defendant declining to plead further, there was a decree as prayed, with direction that execution should issue in favor of said Harsha. An appeal from this order was denied, upon the ground "that no appeal lies from an order or decree allowing costs only." Upon application to this court and full argument we held that the appeal had been wrongly denied, and awarded a writ of mandamus. The appeal is now heard upon the merits. The question arises upon the petition and demurrer.

The petition stated the facts and circumstances upon which Mr. Harsha's claim must stand or fall, and the substantial averments of that petition, together with those orders and decrees which were exhibits thereto, are stated in our opinion in the mandamus proceeding, reported as In re Michigan Central Railroad Company, 124 Fed. 727, 59 C. C. A. 643, and reference is now made to that opinion for a more detailed statement of the history of the claim now in question.

1. The motion to dismiss, upon the ground that the appeal is from a decree or order for costs only, must be overruled. The appealability of the decree, whether for technical costs or an allowance for special services, was fully considered and decided in the contest over the issuance of a mandamus.

2. Section 828, Rev. St. [U. S. Comp. St. 1901, p. 635], provides, among other clerk's fees, that he may receive "for receiving, keeping, and paying out money, in pursuance of any statute or order, one per centum on the amount so received, kept, and paid." The foreclosure sale out of which this controversy arises was made by a special master. By the decree of sale the master was ordered to pay the proceeds of sale, except enough to pay costs, etc., to the mortgage trustee, complainant in the cause, the Farmers' Loan & Trust Company, as trus-

tee for the bondholders. This the master did. The clerk, therefore, neither received, kept, nor paid out one dollar of the proceeds of sale thus received, kept, and paid out by the master, and was not entitled to any commission under the provision quoted. Whether, under section 995 [U. S. Comp. St. 1901, p. 711], the court should have made a different disposition and brought the fund into the care and under the responsibility of the clerk, and had it paid out by the clerk, we need not consider. A clerk's commissions do not attach, as they did prior to this act, whenever money is subject to the order of the court, as was the case when Ex parte Prescott, 2 Gall. 146, Fed. Cas. No. 11,388, was decided, but only when he has actually received, kept, and paid it out.

In Re Goodrich, 4 Dill. 230, 10 Fed. Cas. 603, the order was that the defendant pay the money "into the registry of the court for the purpose of satisfying judgment and costs." The defendant paid direct to the plaintiff's attorneys. The clerk claimed 1 per cent. commission, under section 828, supra, upon the sums so paid. Judge Dillon disallowed the claim, saying that the 1 per cent. allowed by the statute "is for compensation to the clerk for the trouble and responsibility of actually receiving, keeping, and paying out money," and that he "was not entitled to a commission on moneys which, although ordered to be, were not in fact, paid to him under the writs of mandamus." In this construction, Judge Dillon followed Justice Miller in Upton v. Tribilcock, 10 Fed. Cas. 604, note. In Farmers' Loan & Trust Co. v. Dart, 91 Fed. 451, 33 C. C. A. 572, an opinion by the Circuit Court of Appeals for the Fifth Circuit, the claim of the clerk for a commission upon the surplus earnings of a receivership deposited by the receiver, by direction of the court, in a designated depository of the United States, to be paid out by the receiver under orders of the court, was disallowed. The ground of the decision was that, although deposited in the registry of the court, the fund was not subject to the clerk's check, nor was he under any responsibility for it. To the same effect are the cases of Ex parte Plitt, 2 Wall. Jr. 453, Fed. Cas. No. 11,228; Leech v. Kay (C. C.) 4 Fed. 72; Easton v. Houston, etc., Ry. Co. (C. C.) 44 Fed. 718; N. W. Life Ins. Co. v. Quinn (C. C.) 69 Fed. 462; Johnson v. Southern B. & L. Ass'n (C. C.) 95 Fed. 922. This also seems to be the view of the Supreme Court. U. S. v. Kurtz, 164 U. S. 49, 53, 17 Sup. Ct. 15, 41 L. Ed. 346.

3. After the proceeds of sales had reached the hands of the mortgagee, it was found that the holders of bonds aggregating $424,000 would not receive payment; those bonds not maturing until 1902, 20 years after the foreclosure, bearing 8 per cent. interest, and guarantied as to principal and interest by the Michigan Central Railroad Company. In this situation the railroad applied to have the money applicable to the unpaid bonds paid over to it, upon giving satisfactory security to pay the unpaid bonds, principal and interest, as they matured. For the purpose of complying with this most reasonable application, the court below ordered the trust company to replace in the hands of its master, Addison Mandell, $424,000, and that Mandell "should deposit same to the credit of the court in the National Bank of Commerce in New York, a designated depository of the United States." Mandell

made the deposit, and reported to the court that he had received a certificate of deposit certifying that he had "deposited in said bank $424,000, payable to the order of the said master on the surrender of said certificate properly indorsed and accompanied by an order of the judge or judges of the court," etc. On December 2, 1882, the court made an order which directed that "the said master in chancery do pay over to the Michigan Central Railroad Company the sum of $424,000," when the said company "shall deliver to the said master in chancery its bond," in the penal sum of $800,000, conditioned to pay to the holders of said 424 bonds, "the interest as it becomes due and the principal thereof at its maturity, * * * or to repay the said sum of $424,000, or any part thereof which the court may direct, into the registry of said court, * * * and shall also deliver to the said master in chancery, in pledge for collateral security to the said bond," $424,000 in registered mortgage bonds of the said company, said collateral bonds to be registered in the name of the clerk of the circuit court, "transferable only upon the order of said court, and that said $800,000 bond and said last-described bonds be deposited in a safe of the Trust, Security & Safe Deposit Company, of Detroit, under the control of and only to be opened upon the order of this court, and that the use of said safe be furnished at the expense of said Michigan Central Railroad Company."

In accordance with this order the special master, Addison Mandell, paid over said $424,000 and received from the railroad company the principal bond and the collateral bonds to secure same, and both were deposited as required by the order, and have since remained in the said safe of said trust company subject to the order of the court. Twenty years afterwards the railroad company paid off 266 of the mortgage bonds upon which it was liable as guarantor, and filed its petition, accompanied by the canceled bonds, asking that its collateral to a like amount might be returned. The court very properly directed its clerk to open the vault and return 266 of the company's bonds so held as collateral. This was done. The clerk thereupon filed his petition, already referred to, in which he asked that the railroad company be required to pay him the costs now in controversy. The paragraph of his petition setting out his claim is as follows:

That your petitioner claims compensation for the receiving, keeping, and paying out of the $424,000 aforesaid paid back to the master, Addison Mandell, by the Farmers' Loan & Trust Company, and subsequently deposited in a designated United States depository, subject to the order of the court, which was subsequently withdrawn from the court and paid to the Michigan Central Railroad Company, as above set forth; that he claims compensation also for other special services as clerk in identifying, canceling, transferring, and assigning said bonds, and for clerk's fees as follows:

| | |
|---|---:|
| One per cent. (1 per cent.) on $266,000. | $2,660 00 |
| For special services in examining, identifying, checking, canceling, and assigning bonds | 50 00 |
| For other services as clerk, above referred to, for filing papers and entering orders | 85 |
| | $2,710 85 |

This sum of $424,000 was never received, kept, or paid out by the clerk. It was never subject to his check, and he never became in any

way responsible for it. But it is said that, when it was paid by the master in chancery into the New York depository, it was within the "registry" of the court and constructively within the possession of the clerk. If being subject to the order of the court is to be within the "registry" of the court, then this money, from the time it was paid into the hands of the master in chancery, was within the "registry" of the court. But being subject to the order of the court does not necessarily place it in the keeping of the clerk, either actually or constructively. To entitle the clerk to this commission of 1 per cent., it must be paid to him or be subject to his order, so that he becomes responsible for its keeping and payment. The test is, did the clerk receive, keep, and pay this fund over to the railroad company? The answer is, he did not. The court described the money as "in the hands" of Mandell, and it was withdrawn upon Mandell's indorsement, and was by Mandell paid over to the railroad company. It was never actually or constructively in the clerk's custody, or paid out by him.

4. The suggestion that he did have the constructive possession of the collateral bonds of the railroad company and paid them out when he returned them to the railroad company, and that for this service the clerk is entitled to the commission of 1 per cent., has nothing in it. Section 995, supra, only requires that "money" shall be deposited as therein prescribed, and section 828, supra, only allows the payment of 1 per cent. on "moneys" received, kept, and paid out. This is recognized in Thomas v. Chicago, etc., Ry. Co. (C. C.) 37 Fed. 548, 550.

5. We know of no authority for the allowance of such a commission outside of the statute. The clerk's only service, aside from those matters for which he has asked and been allowed $50 without contest, was in keeping the key to a vault rented by the railroad company in which nonnegotiable securities were deposited. This vault could not be opened without the order of the court, and the bonds could not be collected or disposed of without a like order.

The order must be reversed, with directions to set aside the judgment and to render judgment of $50.85, the amount of the two items uncontested, and to dismiss the petition in so far as any further fees, allowance, or costs is prayed.