UNITED STATES v. PENNSYLVANIA R. CO.*

(Circuit Court of Appeals, Fourth Circuit. July 5, 1922.)

No. 1949.

1. **Appeal and error ⬾1170(13)—Jurisdictional defects cannot be ignored as "technical errors."**

   Failure to appeal or obtain a writ of error, which can alone confer jurisdiction on a Circuit Court of Appeals, cannot be ignored under Judicial Code, § 269, as amended (Comp. St. Ann. Supp. 1917, § 1246), requiring courts to give judgment without regard to "technical errors," defects, or exceptions which do not affect substantial rights of the parties.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Technical Error.]

2. **Clerks of courts ⬾54—Entitled to commission on fine paid; "money received, kept and paid out in pursuance of order of court."**

   Money paid to the clerk of a District Court in discharge of a fine imposed by the court is money received, kept, and paid out pursuant to an order of the court, on which the clerk, under Rev. St. § 828 (Comp. St. § 1383), is entitled to a commission of 1 per cent.; but he is not entitled to collect a commission on his own fees or on those of the district attorney or marshal which may be paid to him.

3. **Costs ⬾174(2)—Commission of clerk taxable as costs.**

   Where the judgment of a District Court imposing a fine also includes costs, the commission of the clerk on the fine paid is taxable as part of the costs.

   Knapp, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Maryland at Baltimore; John C. Rose, Judge.

Action by the United States against the Pennsylvania Railroad Company. From an order (283 Fed. 438) relating to costs, plaintiff appeals. Reversed.

Murray T. Donoho, Asst. U. S. Atty., of Baltimore, Md. (Robert R. Carman, U. S. Atty., of Baltimore, Md., on the brief), for appellant.

Shirley Carter, of Baltimore, Md., for appellee.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge. The United States instituted in the trial court a civil action against the appellee, to recover a fine for a violation of the Twenty-Eight Hour Law (34 Stats. 607 [Comp. St. §§ 8651–8654]). The defendant pleaded guilty. The judgment was "that the defendant shall pay a fine of $100 and costs of suit." The

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.
*Certiorari denied 258 U. S. —, 43 Sup. Ct. 96, 67 L. Ed. —.

defendant being ready to satisfy the judgment asked for and received from the clerk the following taxation of costs:

Taxation of Costs.

United States costs:
Attorney's docket fee.................................$10.00
Marshal's fees ........................................ 2.14
Clerk's fees:
Filing declaration .................................... .10
Issuing summons .................................... 1.00
Making copy declaration to serve on defendant. ........... .50    (5 folios)
Making copy writ .................................... .20
Filing return of U. S. marshal to writ of summons ....... .10
Entering joinder of issue on defendant's plea ............ .15
Entering judgment ................................... .15
Making dockets, etc. ................................. 2.00    4.20

Total ............................................  $16.34
Clerk's commissions of 1% on fine of $100.00 and $16.34,
U. S. costs .........................................    1.16

Grand total ...................................    $17.50

Thereupon the defendant moved the court to strike out the item of $1.16, clerk's commission. This motion was granted, and the government has appealed.

[1] A similar taxation of costs, followed by motions to strike and rulings adverse to the government, were made in actions under the Twenty-Eight Hour Law against the Baltimore & Ohio Railroad Company, and against the Western Maryland Railway Company. And in a criminal case against one Vincenti the same taxation, motion, and ruling were made. The Vincenti case raised also a question as to the right, or duty, of the clerk to charge the 1 per cent. clerk's commission on some $19,000 face value of Liberty Bonds, which had been deposited by Vincenti with the clerk in lieu of cash bail. The decision of the court below (following McGovern v. U. S. [C. C. A.] 272 Fed. 262) in respect to the commission on the bonds was in favor of the government. It was stipulated by counsel for all the parties above mentioned that the decision of this court in the present case should be binding in the other cases. However, this court cannot review the ruling of the trial court in respect to the commission on the Liberty Bonds. The United States is the sole appellant. The judgment below upheld the contention of the United States. It follows that this court has no jurisdiction. The appellant cannot ask a review of the judgment, as it was in favor of the appellant. See O'Neil v. Wolcott Mining Co., 174 Fed. 527, 535, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200; Midland Valley Co. v. Fulgham, 181 Fed. 91, 95, 104 C. C. A. 151, L. R. A. 1917E, 1. Vincenti cannot ask a review of the judgment, as he has not either assigned error or sued out an appeal. Guarantee Co., etc. v. Phenix Ins. Co., 124 Fed. 170, 172, 173, 59 C. C. A. 376; Building & Loan Ass'n v. Logan, 66 Fed. 827, 828, 14 C. C. A. 133. And as the writ of error or appeal is the basis of the jurisdiction of this court, we cannot construe the Act of February 26, 1919 (40 Stats. 1181, c. 48 [Comp. St. Ann. Supp. 1919, § 1246]), as intended to confer jurisdic-

tion. This statute requires that judgment shall be given "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." A complete failure to confer jurisdiction cannot properly be regarded merely as "technical error." See Rumsey v. New York Life Ins. Co. (C. C. A.) 267 Fed. 554, 556; Standard Oil Co. v. Allen, 50 App. D. C. 87, 267 Fed. 645, 647; Rich v. U. S. (C. C. A.) 271 Fed. 566, 570; Rosen v. U. S. (C. C. A.) 271 Fed. 651, 653; Katz v. U. S. (C. C. A.) 273 Fed. 157, 158; Trope v. U. S. (C. C. A.) 276 Fed. 348, 351.

This appeal does, however, raise two somewhat important questions: The propriety of charging to a defendant (1) a commission on fines paid directly to the clerk, and (2) a commission on the other fees of the clerk, and on the fees of the district attorney and of the marshal.

### (1) The Commission on Fines.

[2] The seventeenth paragraph of section 828, Rev. Stats. (Comp. St. § 1383), reads:

"For receiving, keeping and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept and paid."

The Act of February 26, 1853, c. 80 (10 Stats. 161, 163), is the immediate source of the foregoing provision of the Revised Statutes, and its language is in effect the same as that of the revision. The earliest prototype of this provision is found in the Act of March 1, 1793, c. 20 (1 Stats. 332, 333), which applies only to fees in admiralty proceedings. At the end of a schedule of fees, there is allowed the clerk on "all money deposited in court one and a quarter per cent." The earliest general statute we have found which allows a commission to the clerks of the District and Circuit Courts is the Act of April 18, 1814 (3 Stats. 133), which provides:

"* * * And that the clerks of the District and Circuit Courts of the United States shall be entitled to one-half of one per centum and no more on money deposited in court, any law to the contrary notwithstanding."

While the question is not free from difficulty, we think that the commission on the fine was properly collected. The judgment of the court that the United States recover of the defendant a fine of so many dollars is in effect an order of court that, if tendered to him prior to the issue of process of execution, the clerk shall in his official capacity receive, keep, and pay out in accordance with law the amount of such fine. In Blake v. Hawkins (C. C.) 19 Fed. 204, 205, an action between private litigants, it is said:

"There is no question but that the clerk received, kept, and paid out the sum upon which he claims his 1 per cent. It is, however, contended by the defendants that he did not do so 'in pursuance of any statute or order of the court.' The controversy depends upon whether or not the clerk received the money under an order of this court. This seems too plain for discussion. The order of the court was its judgment. That was, that the defendants pay to the plaintiffs the amount to which they were entitled. It was under that order that the defendants paid the sum recovered to the clerk. They might have awaited an execution, or, if the money were in the hands of a trustee or officer who would be controlled by the order of the court, an order directing such officer or trustee to pay as should be ordered. But it was safe for

them to pay the clerk. The judgment and his official bond, one or both, were their protection. Had there been no 'order of the court,' they could not have safely paid him. He would have been only their agent, or the agent of the plaintiffs. The judgment under which, and under which alone, they paid the money, made him the agent of the law, and threw around the payment the security of the bond which the statute requires. If the clerk had failed to pay the amount of the judgment to the plaintiffs, it could not have been again collected from the defendants."

In a criminal or penal case, without the judgment, there could be no duty on the defendant to pay, and no possibility of a duty on the part of the clerk to receive payment. The judgment therefore creates the duty on the part of the clerk, and every act done by the clerk with respect to money so received is done pursuant to the implied requirements of the judgment. Moreover, there has never been any hand except that of the clerk which could receive payment of a fine prior to the issue of execution. Immemorially judgments imposing fines have been construed and understood as authorizing payment of fines to clerks, and as making it the duty of the clerks to receive, keep, and pay out such money according to law, if tendered prior to issue of execution.

[3] In so far then as the meaning and intent of the statute is concerned, the money paid to the clerk in discharge of a fine is money received, kept, and paid out pursuant to an order of court. But the liability of the defendant to pay this item of costs remains to be considered. This question is not one of the construction of the statute, but of the meaning of the phrase "and costs" in judgments imposing fines. It is an agreed fact in the case at bar that for "many years" it has been the practice of the clerk of the trial court to charge the commission on fines paid to the clerk, in cases where the judgment included costs, to the government, and to collect this charge from the government and not from the defendant. The record does not inform us whether the custom has been general or not. But, assuming that it has been general and that it is of very long standing, it affords no sufficient reason for construing a judgment that the defendant pay the costs as meaning, at least in part, exactly the reverse.

It is argued that in receiving, keeping, and paying out the fine, the clerk is rendering a service only to the government. But this is equally true of the service rendered in issuing process, in entering orders, and in performing any other of the clerk's duties in connection with the prosecution.

It should here be said that the Act of February 26, 1919, c. 49 (40 Stats. 1182 [Comp. St. Ann. Supp. 1919, §§ 1385a–1385i]) seems to us to have no effect in respect to the matter in hand. This statute (the amendment of February 11, 1921, c. 46, 41 Stats. 1099, having no effect in this connection) does compensate the clerks by salaries; but it also provides that—

"All fees and emoluments authorized by law to be paid to the clerks of the United States district courts, * * * shall be charged as heretofore and shall be collected, as far as possible, and paid into the Treasury of the United States. * * *"

### (2) The Commission on Fees.

(a) Clerk's fees: From the creation of the federal trial courts until 1841 the clerks of the Circuit and District Courts were permitted to retain all of the fees and emoluments allowed them by law for their personal compensation and to reimburse them for official expenses. U. S. v. Mason, 218 U. S. 517, 31 Sup. Ct. 28, 54 L. Ed. 1133. The first statute which made it the duty of the clerks to pay any part of such fees and emoluments into the treasury was the Act of March 3, 1841, c. 35 (5 Stats. 427), which authorized the clerks to retain a sufficient amount to pay office expenses and the sum of $4,500 per annum for compensation, the balance if any to be paid into the treasury. The Act of May 18, 1842, c. 29 (5 Stats. 475–483), is to the same effect, except that it reduces the compensation to $3,500 per annum. In the Act of 1853, supra (10 Stats. 166), is a similar provision. This statute also provided for semiannual accountings.

The clerk's fees in every case must, of course, be ascertained and taxed without reference to accounting periods. It necessarily follows that the clerk's fees earned in the first case tried in any particular accounting period (as well as in many other early cases) would be retained by the clerk. Such costs would not be "received, kept and paid out" by the clerk. They would be received and kept by the clerk; but would not be paid out. Only the clerk's fees earned after the clerk's semiannual compensation and the office expenses for such period had been received by the clerk could possibly come within the language of the statute. For instance, every clerk was in 1853 entitled to retain for his personal compensation, in addition to office expenses, for each half year, the sum of $1,750. In a case tried on the 1st day of January of any year, every cent of the clerk's fees would necessarily be used in paying, in small part, the clerk's compensation and office expenses. This money the clerk would in no possible event ever "pay out." He would retain it. On the other hand, it might well be that the clerk's costs in a case tried in June of the same year would be in excess of the clerk's expenses and full semiannual compensation. And in such event the clerk's costs in such case would have to be paid by the clerk to the government. Such costs would literally be money "received, kept and paid out." But it is inconceivable that Congress intended that the clerk's fees earned in June should be increased by a commission, while the clerk's fees earned in January should not be. It could not have been intended that the costs of litigation should vary in accordance with the time of year when the costs were taxed.

It should also be added that it was clearly contemplated that some of the District and Circuit Court clerks might not earn fees in any particular accounting period sufficient to pay their office expenses and the maximum clerk's compensation. In the Act of 1853, immediately following the above-mentioned provision, is a proviso reading:

"When the compensation of any clerk shall be less than five hundred dollars per annum, the difference, ascertained and allowed by the proper accounting officer of the treasury, shall be paid to him therefrom."

Clearly then it was contemplated, in enacting the clause of the statute allowing the commission to the clerks, that the clerks' fees in some districts might not be sufficient in amount to require a payment by the clerk to the government of any part of his fees; while in other districts considerable sums derived from the clerk's fees would have to be paid to the government. Assuredly the imposition of the commission was intended to be uniform, and was not intended to depend on the amount of the clerk's earnings, which, as was known, would vary greatly in different districts. In reason it could not have been intended that litigants in districts where litigation was great in amount should pay a commission on the clerk's costs, while litigants in districts where litigation was slight in amount should not pay such commission.

We think it reasonably clear that the statute was not intended to authorize the commission to be charged on the clerk's fees.

(b) Fees of the district attorney and marshal: In 1853, as well as always prior thereto and for many years thereafter, it was not by any statute, so far as we have discovered, made the duty of the clerks to receive, keep, or pay out the fees in question. The first statute we know of which had such effect is the Act of May 26, 1896, c. 252 (29 Stats. 140, 179). This statute provides for the first time for the payment of salaries to the district attorneys and marshals, in lieu of fees, and provides (pages 179, 180):

"Sec. 6. That on and after the first day of July, eighteen hundred and ninety-six, all fees and emoluments authorized by law to be paid to United States district attorneys and United States marshals shall be charged as heretofore, and shall be collected, as far as possible, and paid to the clerk of the court having jurisdiction, and by him covered into the Treasury of the United States."

Until 1896 (see U. S. v. Cigars [D. C.] 2 Fed. 494, as to the effect of the Act of June 30, 1864, c. 173, 13 Stats. 218, 240, and the Act of July 13, 1866, c. 184, 14 Stats. 98, 111, now section 3216, R. S. [Comp. St. § 5940]), it was not, as has been said, the statutory duty of the clerks to receive, keep, and pay out such fees. Can a judgment that the United States recover a fine and costs be regarded as in any sense an order that the clerk receive, keep, and pay out the fees in question? These fees, in 1853, belonged to the officers in whose favor they were taxed. These officers had a right to themselves collect these fees from the defendant. In this respect these fees differ from fines paid to the clerk. In respect to these fees it cannot be said that there was no one other than the clerk to whom the fees could be paid prior to the issue of process of execution. And therefore it cannot be said that the judgment contains by necessary implication a direction or an order that the clerk receive, keep, or pay out such fees. We think it true that it has been a custom of long standing, at least in some districts, for a defendant, who has been adjudged to pay a fine and costs, to pay both the fine and the fees in question to the clerk. But a long-standing custom, a practice, can at most create a common-law duty on the part of the clerk in respect to such fees.

As the payment of the fees of the district attorney and marshal to the clerk is not in pursuance of either statute or order of court, we are of opinion that the commission cannot be charged on these fees.

It should be added that, with one single exception (U. S. v. Wolters [C. C.] 51 Fed. 896, 897), we have found no reported case in which it appears that the statute in question has been construed as authorizing the clerk to tax a commission on costs. In Blake v. Hawkins (C. C.) 19 Fed. 204, the commission was not charged on the costs; so also seemingly in Farmers' Loan, etc., Co. v. Dart, 91 Fed. 451, 452, 33 C. C. A. 572; Johnson v. Southern, etc., Co. (C. C.) 95 Fed. 922; In re Michigan Central R. Co., 124 Fed. 727, 729, 59 C. C. A. 643; The Adula (D. C.) 127 Fed. 849, 850, 851; Michigan Central R. Co. v. Harsha, 134 Fed. 217, 218, 67 C. C. A. 145; S. Morgan Smith Co. v. Rockingham Power Co. (C. C.) 173 Fed. 923.

It follows that the judgment below must be reversed in so far as the trial court ruled adversely to the government in respect to the commission on the fine.

KNAPP, Circuit Judge (dissenting). As stated in the majority opinion, the defendant pleaded guilty and the judgment entered was "that the defendant shall pay a fine of $100.00 and costs of suit." Section 974 of the Revised Statutes (Comp. St. § 1615) provides:

"When judgment is rendered against the defendant in a prosecution for any fine or forfeiture incurred under a statute of the United States, he shall be subject to the payment of costs; and on every conviction for any other offense not capital, the court may, in its discretion, award that the defendant shall pay the costs of the prosecution."

Section 828, par. 17, allows a clerk's fee of 1 per cent. "for receiving, keeping and paying out money in pursuance of any statute, or order of court." This commission was included by the clerk in the amount due the United States as costs, and was computed on the fine of $100 and on $16.34, the total costs already accrued. The main question here is whether or not the 1 per cent. fee was erroneously allowed. The trial court granted defendant's motion to strike this item from the bill, and the government appeals.

To my mind the term "costs" means only those expenses which a litigant must incur or become liable for in prosecuting or defending a suit, and which if successful he may recover from the adverse party; and I am of opinion that it is used in that sense, and not otherwise, in section 974. The distinction between "fees" and "costs" is pointed out in 15 Corpus Juris. § 2, p. 20, as follows:

"The terms 'fees' and 'costs' are often used interchangeably as having the same application. Nevertheless, costs and fees are essentially different; the former are allowances to a party for expenses incurred in prosecuting or defending a suit—an incident to the judgment. While the latter are compensation to public officers for services rendered individuals, in the progress of the cause."

That is to say, the allowance of "costs" is to reimburse the winning party for moneys necessarily expended by him in the prosecution or defense of his suit. To hold otherwise would be to permit recovery for expenses which he had not paid or incurred. O'Neil v. Kansas City, S. & M. R. Co. (C. C.) 31 Fed. 663.

In this case the government has not paid or become obligated to the

clerk for the "fees" in question, and therefore is not entitled to recover them from the defendant. The long-standing practice of clerks of trial courts to make an individual charge against and to collect from the government a fee or commission of one per cent. on fines paid to them is on the theory of charging for a service rendered to the government, and not for a service rendered to the contesting parties; nor is the fee paid by the government as compensation for services performed during the progress of litigation, but for individual services performed for the government itself. It would seem to follow that the 1 per cent. is chargeable to the government and not to the defendant. And this appears to be implied in what the Supreme Court says in United States v. Kurtz, 164 U. S. 49, 53, 17 Sup. Ct. 1516 (41 L. Ed. 346):

> "The final objection of the government is made to an item for entering an order of court, directing the clerk as to what disposition to make of the money received for fines in certain cases, and for filing thirteen certificates of deposit of the bank for fines paid in to the credit of the Treasurer of the United States. The claim of the government is that the statutory fee of 1 per cent. 'for receiving, keeping and paying out money in pursuance of any statute, or order of court,' covers all incidental services in this connection, including the entry of all orders for the payment of the money, and a filing of all receipts given by the persons to whom it is paid.
>
> "We think, however, the commission of 1 per cent. was intended to compensate the clerk for his services and responsibility in the receipt, the safe-keeping and the proper disbursement of the money, and was not intended to deprive him of fees to which he would have been entitled if the money had been kept and disbursed by another officer."

Moreover, as the clerks of District Courts are now on a salary basis, and no fees are collectible by them from or payable to them by the United States, it seems evident to me that the fees here in controversy cannot be included in the "costs" which defendant was required to pay. I think the order appealed from should be affirmed.