## FORD MOTOR CO. v. VOORHEIS, Clerk of District Court.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1924.)

No. 3902.

1. **Clerks of courts ⟜54—Clerk held not entitled to commission on deposit of Liberty bonds.**

   A clerk of the District Court *held* not entitled under Rev. St. § 828. par. 17 (Comp. St. § 1383), to charge a fee of 1 per cent. on the amount of a deposit of Liberty bonds made by order of the court in a safety deposit vault to secure the payment of money and subject only to the order of the court.

2. **Clerks of courts ⟜54—Clerk held not entitled to commission on deposit made on behalf of United States.**

   Where, as authorized by special statute, and on motion of the United States, a court entered an order permitting the government to proceed at once in the making of a river improvement, without awaiting condemnation proceedings, on the voluntary deposit by a local party of Liberty bonds to secure payment of such awards of damages as might later be made, the clerk cannot justly claim a commission on the amount of such bonds, which would inure solely to the United States.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

The Ford Motor Company brings error to review an order awarding fees to Elmer W. Voorheis, Clerk of the United States District Court for the Eastern District of Michigan. Reversed and remanded.

Alfred Lucking, of Detroit, Mich. (William Lucking, of Detroit, Mich., on the brief), for plaintiff in error.

Frederic L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (Earl J. Davis, U. S. Atty., of Detroit, Mich., on the brief), for defendant in error.

Before DENISON and DONAHUE, Circuit Judges, and ROSS, District Judge.

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DONAHUE, Circuit Judge. On December 17, 1918, the Secretary of War, in pursuance of authority conferred by Act of Congress passed August 8, 1917 (40 Stat. 256, 258), caused proceedings to be instituted in the name of the United States for the acquirement by condemnation of lands, easements, and rights of way for the widening and straightening of the River Rouge, Mich. This act further provided that the United States should proceed with the work of widening and straightening this river channel, if local interests would provide the right of way and pay the damages awarded. The Ford Motor Company assumed this obligation imposed by the terms of the act upon the "local interests." On June 7, 1920, the District Court, upon motion of the United States, made and entered an order awarding possession, in advance of payment, of the several rights of way and easements sought to be acquired by it in said proceeding, upon condition that there be deposited with the clerk of the court, by the "local interests" that had assumed the obligation of paying the damages that might be awarded, $2,000,000, face value of the principal, of bonds or notes of the United States of America, issued under any one of the First, Second, Third, or Fourth Liberty or the Victory Bond Acts (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6829ee et seq.), on behalf of the United States, as security for the payment to respondents of compensation and damages that might be awarded to each, respectively, which bonds should be deposited in the name of the clerk in a safe or vault to be provided for such purpose at the expense of said "local interests," in the National Bank of Commerce of Detroit, Mich., "which said safe or vault shall be and remain at all times subject to the control of the court and only opened as directed by its further order," reserving, however, the right in favor of the depositors to permit them, upon proper application, to have access to said bonds at such times as interest coupons became due, and to detach and retain all matured coupons.

The Ford Motor Company, on behalf of the United States, complied with this order and deposited bonds of the face value of $2,000,000, whereupon the United States took immediate possession of the lands, rights of way and easements in question and proceeded with the contemplated improvement. On March 20, 1922, the maximum liability of the United States to the respondents in the condemnation suits was ascertained to be $270,859.56. On the same date the Ford Motor Company requested the court to release all the bonds deposited by it, except an amount sufficient to secure the payment of the sum above mentioned. The defendant in error, as clerk of the District Court, filed his petition averring that under the provision of paragraph 17 of section 828, R. S. of the United States (Comp. St. § 1383), he was entitled to receive and control for the benefit of the United States a poundage fee of 1 per cent. of the face value of the bonds deposited in pursuance of the former order of the court. To this petition the Ford Motor Company filed an answer, denying that the clerk of the District Court had received, kept, or paid out any money or bonds in pursuance of any statute or order of the court, within the purview of paragraph 17 of section 828, and that no such fee or per-

centage in his favor for the use and benefit of the United States is authorized by any statute of the United States.

Upon the issue so joined the District Court, on June 20, 1922, entered an order releasing $1,350,000 of the bonds so deposited by the Ford Motor Company, but requiring it to pay the defendant in error a poundage fee of $13,500 as a condition precedent to such release. The Ford Motor Company paid this fee under protest and received the bonds ordered to be released by the court.

[1] Paragraph 17 of section 828, United States Revised Statutes, provides in part as follows:

"Clerks' fees * * * for receiving, keeping, and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept, and paid."

This act was passed when the entire compensation of clerks came from fees which the law authorized them to charge. Under the present statute, clerks are paid a salary and the fees collected under section 828 are paid into the treasury of the United States, but it is further provided that no such fee shall be charged or collected from the United States.

The statute, under authority of which this order awarding immediate possession was made and entered by the court, requires as a condition precedent to the taking possession of such property that "certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted." 40 Stat. 911, § 5 (Comp. St. Ann. Supp. 1919, § 9878a). No previous appropriation of funds for this purpose was made by the United States. The court did not order the deposit of money, but, on the contrary, ordered the deposit of securities in the sum of $2,000,-000 in government bonds. These bonds did not pass under the control of the clerk as money received and deposited by him and subject to his check, but, on the contrary, were deposited in a safety deposit vault provided and paid for by the depositor, which vault was in the sole control of the court and could not be opened except on its order. They were later returned, in kind, to the depositor when the purpose of their deposit had been fully accomplished. Michigan Central R. R. v. Harsha, Clerk, 134 Fed. 217, 67 C. C. A. 145; Thomas v. Railway Co. (C. C.) 37 Fed. 548, 550.

It is insisted, however, upon the part of the defendant in error, that the decision in Railway v. Harsha, supra, has no application to the facts of this case, but it was declared by this court in that case that paragraph 17 of section 828 of the United States Revised Statutes allows the payment of 1 per cent. poundage fee to the clerk, only on moneys received, kept, and paid out by him, and not upon bonds deposited to guarantee the payment of money, citing with approval Thomas v. Railway Co., supra, which clearly distinguishes between money and bonds or other personal property that may be accepted in lieu of money. To the same effect is the decision of the Circuit Court

of Appeals of the Eighth Circuit in Anderson v. United States, 282 Fed. 258.

It is further insisted upon behalf of the defendant in error that under the provisions of section 1320 of the Revenue Act of 1918 (40 Stat. p. 1148 [Comp. St. Ann. Supp. 1919, § 3301a]), bonds deposited as security are the same as a cash deposit and are subject to the same poundage fee as money. That act provides that where "any person is required to furnish any recognizance, stipulation, bond, guaranty, or undertaking, hereinafter called 'penal bond,' with surety or sureties, such person may, in lieu of such surety or sureties, deposit * * * with the official having authority to approve such penal bond, United States Liberty Bonds or other bonds of the United States in a sum equal at their par value to the amount of such penal bond required to be furnished, * * * the acceptance of such United States bonds * * * shall have the same force and effect as individual or corporate sureties or certified checks, bank drafts, post office money orders, or cash, for the * * * amount of such penal bond."

For the purposes of this case it is unnecessary to determine whether bonds deposited, where a penal bond is required, are subject to a poundage fee as money. In this case no bond, penal or otherwise, was required or demanded. The order awarding immediate possession was made under authority of section 5 of the Act of July 18, 1918 (40 Stat. 911 [Comp. St. Ann. Supp. 1919, § 9878a]), and not under authority of section 1320. The court had the power to make this order for the deposit of these bonds regardless of the provisions of section 1320, which apply to a wholly different subject-matter and have no application whatever to the facts of this case.

This conclusion necessarily follows, not only from the plain and unequivocal language used in the enacting clause of section 1320, but it is further expressly provided in that section "that nothing contained herein shall affect the authority of courts over the security, where such bonds are taken as security in judicial proceedings, or the authority of any administrative officer of the United States to receive United States bonds for security in cases authorized by existing laws."

[2] Aside from these considerations, which in the opinion of this court are decisive of the question presented by the record in this case, this poundage fee, under the present statute, would inure to the sole use and benefit of the United States. The United States was the petitioner in these condemnation suits. It was upon the prayer of the petition and upon the motion of the United States that an order was made awarding it immediate possession, in advance of payment, of the lands and interests sought to be acquired by the condemnation proceedings. So far as disclosed by this record it was the United States that desired the immediate possession of the rights of way and easements in question, to the end that it might proceed with the improvements to be paid for by the United States, without the delay incident to the final determination of compensation and damages to the respondents. The fact that the Ford Motor Company had assumed the burden placed upon the "local interests" did not require it to make this deposit, but in order that the motion of the United States might prevail, it volun-

tarily offered to make the deposit on behalf of the United States. If the United States had made this deposit on its own behalf, no such fee could have been taxed against it. That it made this deposit through and by the Ford Motor Company would not seem to be a sufficient reason why it should profit at the expense of that company to any further extent than contemplated by the order which permitted it to take immediate possession and commence work at a season of the year more suitable to that character of work than the winter season.

It is said, however, that the Ford Motor Company was more interested in this improvement than the United States. That position is untenable. The United States cannot condemn property for the straightening of a river channel for private purposes. Whether this was or was not a public improvement was a question to be determined by Congress, and not by this court. Congress, however, in authorizing this public improvement, did recognize the fact that "local interests" would be specially benefited thereby in a manner not common to the public generally. For that reason it required the "local interests" to provide the right of way and pay the damages awarded, In the opinion of Congress that was a just distribution of the costs of these improvements between the government and the "local interests." The Ford Motor Company was not the only local interest that was asking for this improvement, but it appears to have been the only one willing to bear the burden imposed by Congress. It has fully met and discharged the obligations it assumed under this act of Congress, and it would be wholly unfair and unjust to compel it to pay the sum of $13,500 into the treasury of the United States, the real party in interest in these condemnation suits, as a further burden not assumed by it, and not within the purview of the act of Congress authorizing this improvement.

·For the reasons stated, the judgment of the District Court is reversed, and cause remanded for further proceedings in accordance with this opinion.